**In the Interest of H.C.S., a Child.**

**No. 04–06–00005–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 8, 2006.

Amber M. Liddell, McCurley, Orsinger, McCurley, Nelson & Downing, San Antonio, for appellant.

Harold C. Zuflacht, Stephanie J. Bandoske, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

Opinion by CATHERINE STONE, Justice.

In this appeal we must determine whether a sperm donor has standing to pursue a proceeding to adjudicate the parentage of a child conceived using the donor's sperm. J.S., appellant, brought suit to establish paternity; however, the child's mother, K.D., filed a plea to the jurisdiction challenging J.S.'s standing to bring the parentage proceeding. The trial court granted the plea and dismissed J.S.'s suit for a lack of standing. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

K.D. was in a romantic relationship with Marie, appellant's sister. At some point during the relationship, K.D. wanted to have a child. As a result, J.S. agreed to act as the donor and provided the sperm used to artificially inseminate K.D. J.S. contends that he and K.D. verbally agreed that he would not act merely as a "donor"; rather, he would be involved in the child's life. K.D. denies that such an agreement was ever made. In February 2000, K.D. gave birth to a healthy child, H.C.S., conceived with J.S.'s sperm.

In June 2005, after K.D. and Marie ended their relationship and following K.D.'s "persistent denial of visitation and access [to H.C.S.], after a period of allowed visitation," J.S. filed this suit to adjudicate his parental rights. The parties later executed a Rule 11 agreement which provided J.S. with limited access to the child. Subsequently, K.D. filed a plea to the jurisdiction based on J.S.'s alleged lack of standing. Specifically, K.D. argued that a sperm donor cannot file a suit to adjudicate parental rights under the Family Code; thus, the trial court lacked subject-matter jurisdiction to adjudicate the case. The trial court granted K.D.'s plea and dismissed the case. J.S. now appeals.

### STANDING

Standing is a prerequisite to subject-matter jurisdiction and is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000). As an element of subject-matter jurisdiction, standing is an issue that can be raised at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993). A plea to the jurisdiction is a proper vehicle in which a party may challenge a lack of subject-matter jurisdiction. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. As a dilatory plea, the purpose of a plea to the jurisdiction is to defeat alleged claims, notwithstanding whether the claims have merit. *Id.* A dilatory plea should not force a plaintiff to preview the merits of its case; rather, the objective is to establish why the merits should never be reached. *Id.*

Standing to sue is either granted by statute or obtained when a plaintiff can demonstrate a particular injury distinct from one to that of the general public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984). The case at bar is based on statutory standing. J.S. contends the Texas Family Code authorizes his suit, and thus he claims the trial court erred in dismissing the case for a lack of subject-matter jurisdiction.

### TEXAS FAMILY CODE

In order to determine whether the Family Code limits standing in a suit to establish parentage, a statutory construction is necessary. *See Tex. Dep't of Protective & Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 860–61 (Tex.2001) (deciding whether a putative father had standing based on the court's interpretation of the statutory

standing provision); *Doncer v. Dickerson,* 81 S.W.3d 349, 358 (Tex.App.-El Paso 2002, no pet.) (analyzing the Family Code to determine whether it provided a stepmother standing to file a suit affecting the parent-child relationship). When engaging in a statutory construction, as we must in this case, the court may consider the object sought to be attained by the statute, the circumstances under which the statute was enacted, the legislative history, former statutory provisions regarding similar subjects, and consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005).

■ K.D. contends J.S. lacks standing because as a donor, he is not a parent. Section 160.702 of the Family Code states that "[a] donor is not a parent of a child conceived by means of assisted reproduction." TEX. FAM.CODE ANN. § 160.702 (Vernon Supp.2006). It is undisputed that H.C.S. was conceived by means of assisted reproduction, and that J.S. was the sperm donor for the reproduction. J.S. argues, however, that standing in a suit to adjudicate parentage is governed by Section 160.602, which provides that "a proceeding to adjudicate parentage may be maintained by ... a man whose paternity of the child is to be adjudicated...." *Id.* § 160.602(3).

In support of his contentions, J.S. relies on *In re Sullivan,* 157 S.W.3d 911 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding). Like the case at issue, in *Sullivan* an unmarried man, Russell, and unmarried woman, Sullivan, agreed to conceive a child with Russell providing his sperm for artificial insemination. *Id.* at 912. However, the parties signed a co-parenting agreement before the child was born which provided Russell possession of the child consistent with the standard possession schedule therein. *Id.* at 913. Following a disagreement, Russell

filed suit seeking a decree to establish a parent-child relationship, as well as an order appointing him as a joint managing conservator. *Id.* In response, Sullivan filed a plea to the jurisdiction claiming that Section 160.702 divests a sperm donor of standing to bring a proceeding to adjudicate parentage. *Id.* The trial court ruled that Russell had standing; Sullivan then filed a petition for writ of mandamus. *Id.*

In *Sullivan* the court noted that "[b]efore reaching the issue of whether Russell is a donor who lacks parental rights, we first must determine whether ... donor status is part of the inquiry as to whether Russell has standing to maintain a parentage proceeding." *Id.* at 915 (footnote omitted). The court conducted a thorough analysis of the relevant statutory provisions and concluded:

> Based on the language of the statute, the object sought to be obtained, the circumstances under which the statute was enacted, the legislative history, former statutory provisions, including laws on the same or similar subjects, and the consequences of the different constructions, we conclude that, at a minimum, section 160.602(3) confers standing on a man alleging himself to be the biological father of the child in question and seeking an adjudication that he is the father of the child. We further conclude that under the statute, as drafted, the issue of the man's status as a donor under section 160.702 is to be decided at the merits stage of the litigation rather than as part of the threshold issue of standing.

*Id.* at 919.

While we acknowledge the scholarly research reflected in the *Sullivan* opinion, we respectfully disagree with the court's conclusion that status as a donor is irrelevant to the question of standing to estab-

lish parentage. We likewise do not agree that donor status is more appropriately addressed at the merits stage of the litigation. To the contrary, based on the plain language of the Family Code as set forth below, we conclude that J.S., as an unmarried man who provided sperm used for assisted reproduction and who did not sign and file an acknowledgment of paternity, does not have standing to pursue a suit to determine paternity of the child born through the assisted reproduction.

Title Five of the Texas Family Code contains the general provisions governing the parent-child relationship and suits affecting the parent-child relationship and thus is the starting point for determining the rights of the parties to this suit. Section 102.003, the general standing provision for suits affecting the parent-child relationship, states that a suit may be filed at any time by "a man alleging himself to be the father of a child filing in accordance with Chapter 160, subject to the limitations of that chapter, but not otherwise...." TEX. FAM.CODE ANN. § 102.003(a)(8) (Vernon Supp.2006). An "alleged father" is in turn defined as "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." *Id.* § 101.0015(a) (Vernon 2002). A "male donor" is specifically excluded from the definition of an "alleged father." *Id.* § 101.0015(b) (Vernon 2002). Chapter 160 of the Texas Family Code, the Uniform Parentage Act, defines a "donor" as "an individual who produces ... sperm used for assisted reproduction...." *Id.* § 160.102(6) (Vernon 2002).[1]

While J.S. does not dispute that he is a male donor as that term is statutorily defined, he contends he has standing to pursue this suit because he is "a man whose paternity of the child is to be adjudicated." *See id.* § 160.602(a)(3). Section 160.602 provides in part as follows:

(a) Subject to Subchapter D [Voluntary Acknowledgment of Paternity] ... a proceeding to adjudicate parentage may be maintained by:

(3) a man whose paternity of the child is to be adjudicated....

*Id.* § 160.602(a)(3) (Vernon 2002). J.S.'s contention that he is entitled to pursue this case because his parentage as to H.C.S. has never been adjudicated ignores the other statutory provisions that address his unique status as a donor. While J.S. is a man and his paternity as to H.C.S. has not been adjudicated, and while he alleges himself to be the father of H.C.S., he is admittedly a male donor and thus statutorily he is not an alleged father and does not have standing to pursue an original suit. *See id.* § 101.0015(b)(3). Further, the standing provision J.S. relies on clearly states that it is subject to other provisions regarding voluntary acknowledgment of paternity. Those provisions allow a male donor to effectively become the parent of a child conceived by means of assisted reproduction if he and the mother of the child "sign [and file] an acknowledgment of paternity with the intent to establish the man's paternity." *Id.* §§ 160.301; 160.305 (Vernon 2002 and Vernon Supp.2006). The parties to this suit did not execute and file an acknowledgment of paternity, as permitted by the statute. Having failed to follow the statutory procedures for a male

---

1. A husband who provides sperm to be used by his wife for assisted reproduction is not included in the definition of "donor." *Id.* § 160.102(6)(A) (Vernon 2002). Further, a husband who provides sperm for or consents to assisted reproduction by his wife is the father of the resulting child. *Id.* § 160.703. J.S. and K.D. were not married, thus our discussion does not apply to spouses involved in assisted reproduction.

donor to determine parentage, J.S. cannot now circumvent the statutory plan for establishing paternity in assisted reproduction cases.

Indeed, under J.S.'s reading of the Family Code, any alleged donor—even one who does not know the mother or one who donates to a sperm bank—could challenge paternity in an original proceeding. Rather than promoting assisted reproduction, such a course of action would subject children born of assisted reproduction and their mothers to the financial and emotional costs of defending suits like this one on the merits.

The order of the trial court is affirmed.