# OPINION ON APPELLANTS' MOTION FOR REHEARING

No. 04-07-00656-CV

**IN THE INTEREST OF H.G.**, K.G., J.G., and T.G., Children

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 05-1912-CV
Honorable W. C. Kirkendall, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice
Dissenting Opinion by:   Alma L. López, Chief Justice

Sitting:       Alma L. López, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: June 11, 2008

AFFIRMED; APPELLANTS' MOTION FOR REHEARING DENIED

On April 23, 2008, we issued an opinion and judgment affirming the trial court's judgment. Appellants Deborah and Donald Glynn have filed a motion for rehearing. We deny the motion but withdraw our April 23, 2008 opinion and issue this opinion in its place. Our April 23, 2008 judgment remains unchanged.

This is an appeal from a trial court's dismissal of a petition in intervention for lack of standing. The only issue is whether the trial court properly concluded that the defense of estoppel or quasi-estoppel is inapplicable when the Texas Legislature has declined to confer standing on a party and, in fact, has statutorily precluded such standing. We affirm the trial court's decision.

## BACKGROUND

The parental rights of the biological parents of H.G**.**, K.G., J.G., and T.G. ("the children") were terminated. Before the termination Donald and Deborah Glynn, who are the biological maternal grandparents of the children, were named managing conservators. After the termination, Lori and Bruce Gibbens adopted the children with the Glynns' consent. In November of 2005, more than two years after the final adoption, Lori Gibbens filed for divorce and a final decree was entered in March of 2006. The decree named the Gibbenses joint managing conservators of the children.

Approximately eight months after the final decree was entered, the Glynns filed an "Intervenor's [sic] Petition for Modification of Parent-Child Relationship to Provide Grandparent Access"[1] by which they sought an order permitting them "possession of or access to the children." The Glynns claimed the Gibbenses secured the Glynns' consent to the adoption by promising the Glynns could continue visitation with the children after the adoption. Lori Gibbens filed a motion to strike the intervention, contending the Glynns lacked standing and there was no basis in law for their argument regarding quasi-estoppel.

A hearing was held before the trial court. Following the hearing, the trial court found that even if the Gibbenses promised the Glynns continued visitation with the children and even allowed visitation in the past, the Glynns had no standing to bring the action. In its order the trial court stated

---

[1] Though styled as an intervention, this was actually an original suit by the Glynns seeking access. An intervention is an equitable motion filed by a nonparty voluntarily seeking to become a party in a pending suit to protect the nonparty's own rights. *State and County Mut. Fire Ins. Co. v. Kelly*, 915 S.W.2d 224, 226 n.1 (Tex. App.–Austin 1996, no writ); *see* TEX. R. CIV. P. 60. An intervention must generally be filed before entry of judgment; if filed after judgment, it may not be considered unless and until the judgment has been set aside. *Terrazas v. Ramirez*, 829 S.W.2d 712, 735 (Tex. 1991) (citing *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984)); *Express-News Corp. v. Spears*, 766 S.W.2d 885, 889 (Tex. App.–San Antonio 1989, orig. proceeding [leave denied]). By the time the Glynns filed their "intervention," the decree of divorce was a final judgment and had not been set aside. Accordingly, there was no pending suit in which the Glynns could intervene.

that the Glynns' theories of estoppel or quasi-estoppel were inapplicable even if the facts as alleged were true. The trial court dismissed the Glynns' intervention for lack of standing and the Glynns perfected this appeal.

## ANALYSIS

Because the Glynns were managing conservators at the time of the adoption, their consent was part of the adoption process. *See* TEX. FAM. CODE ANN. § 162.010 (Vernon 2002). The Glynns claim that but for the Gibbenses' representations that they would be permitted on-going visitation, they would not have consented to the adoption. Accordingly, when the promised visitations were discontinued by the Gibbenses, the Glynns filed suit seeking continued access. Failing to include any statutory standing allegations in their petition in intervention, the Glynns argued:

> Under the principles of estoppel and quasi-estoppel, [Lori] should be estopped from denying that [the Glynns] have standing to ask for access to these children, because [Lori] promised [the Glynns] that they would continue to have a relationship with the children, and [the Glynns] acted on that promise to their detriment. Furthermore, [Lori] has continued to allow [the Glynns] to have limited contact with the children, and it would not be in the children's best interest to discontinue that contact.

In this appeal, the Glynns assert the trial court erred in concluding their theory of estoppel or quasi-estoppel was inapplicable and could not confer standing in this matter. The Glynns argue the trial court had the equitable authority to estop the Gibbenses from asserting an absence of standing because they made misrepresentations to the Glynns to secure the consent to the adoption and without the Glynns' consent the adoption may have not occurred.

In her motion to strike the Glynns' intervention, Lori Gibbens contended that section 153.434 of the Texas Family Code precluded the Glynns' suit:

A biological or adoptive grandparent may not request possession of or access to a grandchild if:

(1) each of the biological parents of the grandchild has:

\* \* \*

(B) had the person's parental rights terminated . . . and

(2) the grandchild has been adopted, or is subject of a pending suit for adoption, by a person other than the child's stepparent.

TEX. FAM. CODE ANN. § 153.434 (Vernon Supp. 2007). Lori Gibbens also argued there was no authority, statutory or common law, to permit the trial court to use estoppel or quasi-estoppel in this matter. She essentially makes these same arguments in response to the Glynns' appeal.

"When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.–Fort Worth 2005, no pet.); *see Tex. Dep't of Prot. and Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (reviewing applicable standing provisions in Texas Family Code to determine whether purported father had standing); *In re H.C.S.*, 219 S.W.3d 33, 34-35 (Tex. App.–San Antonio 2006, no pet.) (holding that to determine whether sperm donor had standing to file suit to adjudicate parental rights under Family Code, court was required to engage in statutory construction of relevant provisions of Code). The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *Everett*, 178 S.W.3d at 851 (citing *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)). The Texas Legislature has provided a comprehensive statutory framework for standing in the context of suits involving the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 102.003, 102.004, 102.0045, 102.005 and 102.006 (Vernon Supp. 2007).

The Legislature has precluded standing in suits such as this. *Id.* § 153.434[2]; *cf.* § 102.004(b) (stating that original suit requesting possessory conservatorship may not be filed by grandparent or other person). The Glynns cannot demonstrate statutory standing under any provision of the Texas Family Code and are statutorily barred from pursuing this action. Hence, their quasi-estoppel argument.

We recognize that courts, including this court, have applied the doctrine of estoppel or quasi-estoppel in various contexts, including suits relating to the parent-child relationship. *See, e.g., In re A.L.G.*, 229 S.W.3d 783, 787 (Tex. App.–San Antonio 2007, no pet.) (applying doctrine of quasi-estoppel to bar ex-wife from recovering child support arrearage); *Hausman v. Hausman*, 199 S.W.3d 38, 42-43 (Tex. App.–San Antonio 2006, no pet.); *In re Shockley*, 123 S.W.3d 642, 651-53 (Tex. App.–El Paso 2003, no pet.) (applying equitable estoppel to preclude mother from litigating child's parentage). And, in *Hausman*, we held, in the context of paternity and citing a supreme court case involving copyright infringement and trade secret misappropriation, a trial court can apply equitable principles to estop a defendant from relying on a statutory bar to recovery. 199 S.W.3d at 43 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). However, neither *Hausman* nor any of the other cases relied upon by the Glynns have held that estoppel can be used to confer standing where none exists under the legislative framework.

Standing is not merely a "statutory bar." Rather, standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). Subject matter jurisdiction "'involves a court's power to hear a case.'" *Tellez v. City of Socorro*, 226

---

[2] Section 102.004, which governs standing for grandparents, specifically provides that possession of or access to a child by a grandparent is governed by the standards in Chapter 153, which would include the prohibition in section 153.434. TEX. FAM. CODE ANN. § 102.004(c) (Vernon Supp. 2007).

S.W.3d 413, 413 (Tex. 2007) (quoting *U.S. v. Cotton*, 535 U.S. 625, 630 (2002)). For a court to act, it must have subject matter jurisdiction. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). Any judicial action by a court without jurisdiction is void. *Id*. Subject matter jurisdiction exists by operation of law and cannot be conferred or taken away by consent or waiver. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444-45; *Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943). Nor can subject matter jurisdiction be conferred by estoppel. *Taub v. Aquila* S.W.2d. *Pipeline Corp.*, 93 S.W.3d 451, 461 (Tex. App.–Houston [14th Dist.] 2002, no pet.). An absence of standing deprives the trial court of subject matter jurisdiction and renders any trial court action void. *Id*.

Consequently, while equity may estop a party from relying on a mere statutory bar to recovery, it cannot confer jurisdiction where none exists. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444-45; *Taub*, 93 S.W.3d 461. If the Texas Legislature has not conferred subject matter jurisdiction on a trial court, the courts cannot mindlessly produce that result based on equity. Accordingly, we hold the cases relied upon by the Glynns and other cases using equity to preclude application of statutory or other bar to suit or recovery, including *Hausman*, are distinguishable and inapplicable because they do not bear on a court's jurisdiction.

The dissent relies upon the principal of quasi-estoppel to suggest the Glynns have standing in this matter. To support its contention, the dissent first declares that "this court's equity jurisdiction can be used to estop a party from arguing that another party lacks standing." In support of this statement the dissent cites *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80 (Tex. App.–Houston [1st Dist.] 2004, no pet.) and *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67 (Tex. App.–San Antonio 2007, pet. filed). In *Eckland Consultants*, the court held

a party was estopped from arguing an absence of standing because it had accepted benefits under the contract it was attempting to use to deny standing. 176 S.W.3d at 87-88. In *Paradigm Oil*, this court held that where all allegations in a petition, including those that established standing, were deemed admitted as a result of a default judgment, the defaulting party was estopped from denying the plaintiff's standing. 242 S.W.3d at 71-72. Neither *Eckland Consultants* nor *Paradigm Oil* holds that estoppel can confer standing, i.e., subject matter jurisdiction where none exists. While estoppel may preclude parties from arguing facts that negate standing, it cannot confer jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444-45; *Taub*, 93 S.W.3d 461.

The dissent also challenges the majority's statement that the Glynns' consent "was part of the adoption process," seemingly suggesting the adoption could not have proceeded without it and the Glynns are therefore entitled, under principles of equity, to standing in this matter. We respectfully disagree with the dissent's interpretation of section 162.010. Section 162.010, while entitled "Consent Required" and stating "the written consent of a managing conservator to the adoption must be filed," also provides that the court can waive the consent requirement if, in addition to other factors, the court finds "the consent is being refused or has been revoked without good cause." TEX. FAM. CODE ANN. § 162.010 (Vernon 2002). Clearly, the trial court could have approved the adoption without the Glynns' consent under the appropriate circumstances.

Finally, we agree with the dissent that the Glynns had standing before the adoption to seek continued possession and access to the children. *See* TEX. FAM. CODE ANN. § 153.433 (Vernon Supp. 2007) (allowing court to order reasonable access to grandchild by grandparent if at the time relief is requested at least one biological or adoptive parent has not had his or her parental rights terminated). However, we disagree with the dissent's suggestion that because they did not avail

themselves of such remedy purportedly due to the Gibbenses' alleged representations, equity mandates a continuation of their pre-adoption standing. As recognized in *Bowers v. Matula*, 943 S.W.2d 536, 539 (Tex. App.–Houston [1st Dist.] 1997, no writ), the Legislature has created a mechanism for grandparents in the Glynns' situation to seek continued access to their grandchildren. *See id.* However, section 154.433, coupled with section 153.434, establishes "a bright line before which a grandparent's request for access of a grandchild may be made **and after which it may not**." *Bowers*, 943 S.W.2d at 539 (emphasis added). Because the Glynns did not avail themselves of this statutory remedy, their standing is statutorily precluded. *See* TEX. FAM. CODE ANN. § 153.434 (Vernon Supp. 2007).

## CONCLUSION

Whether the Glynns have standing under the Texas Family Code must be determined under the Texas Family Code. *See Sherry*, 46 S.W.3d at 861; *H.C.S.*, 219 S.W.3d at 34-35; *Everett*, 178 S.W.3d at 851. Because they do not have standing and because estoppel cannot be used to confer jurisdiction, the trial court did not err in dismissing the Glynns' petition in intervention. *See* TEX. FAM. CODE ANN. § 153.434 (Vernon Supp. 2002); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 444-45. Accordingly, we affirm the trial court's judgment.

Steven C. Hilbig, Justice