294 S.W.3d 341 (2009)
In the Interest of M.K.S.-V., A Child.
No. 05-08-00568-CV.
Court of Appeals of Texas, Dallas.
August 11, 2009.
Rehearing Overruled September 15, 2009.
*342 Michelle May O'Neil, O'Neal Anderson, Ashely Bowline, The May Firm, Dallas, for Appellant.
Paul Brumley, Jimmy L. Verner, Jr., Verner & Brumley, Dallas, TX, for Appellee.
Before Justices RICHTER, LANG, and MURPHY.

OPINION
Opinion By Justice RICHTER.
This is an appeal from the dismissal of K.V.'s suit for conservatorship or adoption of M.K.S.,[1] a child born in May 2004 to *343 K.V.'s ex-partner T.S. In four issues, K.V. asks us to decide whether (a) her possession of M.K.S. over a twenty-one month period under an informal agreement somewhat similar to the Standard Possession Order found in section 153.312 of the Texas Family Code constituted "actual care, control, and possession of the child for at least six months" as provided in family code section 102.003(a)(9) for purposes of standing to sue for conservatorship; and (b) the dismissal, without a hearing on the merits, of her claims for breach of the possession agreement, adoption, and equitable adoption by estoppel was improper. We answer both in the negative and affirm the trial court's "final judgment dismissing suit."

Background
K.V. and T.S. met in the fall of 1997 and began living together in late 1998. The two talked about having a child together and in mid-2003, after the two had received counseling, T.S. became pregnant with M.K.S. through artificial insemination by a sperm donor. T.S. delivered M.K.S. on May 21, 2004 and co-parented M.K.S. with K.V. until August 3, 2005 when the relationship ended and T.S. moved out with M.K.S. Wanting to keep "some sort of continuity for [M.K.S.]," T.S. agreed M.K.S. could visit K.V. regularly and set up a schedule. Under the agreement, M.K.S. would visit K.V. overnight once a week, alternate Sunday afternoons, alternate weekends beginning on Friday afternoons during the school year and Thursday afternoons "at times" in the summer, and "some holidays."[2] This schedule began August 5, 2005 and continued until April 25, 2007 when T.S. discontinued the visits because K.V. had accessed M.K.S.'s school record against T.S.'s "directive." The following month, K.V. filed suit seeking to be appointed joint managing conservator of M.K.S. or, in the alternative, to adopt her.
Not being a biological parent of M.K.S., K.V. asserted standing to sue for conservatorship under section 102.003(a)(9)as a person who had "actual care, control, and possession of [M.K.S.] for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon 2008). She asserted she was a "parent by estoppel" and had standing to sue for adoption under family code section 102.005(3)as a person who had "actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition." Id. § 102.005(3).
T.S. specially excepted to K.V.'s claims and challenged K.V.'s allegations concerning standing. Following an evidentiary hearing before the associate judge on the issue of standing and an appeal to the trial court, the trial court found K.V. did not have standing to pursue her suit for conservatorship but had standing to pursue the adoption. The trial court found K.V. had standing to pursue the adoption not under section 102.005(3), but under section 102.005(5)having had "substantial past contact with the child sufficient to warrant standing to do so."[3]Id. § 102.005(5). *344 Based on its findings, the trial court ordered K.V. to amend her petition to assert adoption only. See id. § 102.001(b).
K.V. complied, asserting standing under section 102.005(5) and claims for (1) adoption under family code section 162.001, (2) adoption by estoppel, and (3) breach of contract based on an alleged agreement by T.S. that K.V. would be able to adopt M.K.S. K.V. also asserted T.S. breached a contract, as shown by the possession agreement, that K.V. would have possession of and access to M.K.S.
T.S. subsequently moved to dismiss K.V.'s adoption claims, arguing T.S.'s parental rights had not been and would not be terminated, K.V. had never married T.S. and was not a step-parent, and T.S. would not consent and had not consented to the adoption. T.S. also moved to dismiss K.V.'s claim for the breach of the possession agreement, arguing it amounted to a conservatorship claim for which K.V. lacked standing. See generally TEX. FAM.CODE ANN. ch. 153 (providing for possession of or access to a child only to conservators of the child); see also In re P.D.M., 117 S.W.3d 453, 455 (Tex.App.-Fort Worth 2003, pet. denied) (en banc) (noting party's initial right to possession of a child is governed by family code chapter 153). Following a hearing on the motion, the trial court dismissed "all claims" asserted by K.V. and "confirm[ed] the previous finding that [K.V.] lacks standing to pursue her ... claims for conservatorship."

Standing
A person seeking conservatorship of a child must have standing to bring suit. See In re S.S.J.-J., 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.). A component of subject matter jurisdictionwhich is a court's power to hear a case, standing is a constitutional prerequisite to maintaining a lawsuit under Texas law and focuses on who is entitled to bring an action. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex.1993); In re M.P.B., 257 S.W.3d 804, 808 (Tex.App.-Dallas 2008, no pet.). Standing exists by operation of law and cannot be conferred by waiver or estoppel. In re H.G., 267 S.W.3d 120, 124 (Tex.App.-San Antonio 2008, pet. denied) (op. on reh'g). Subject to two exceptions in the context of suits affecting the parent-child relationship (SAPCR), standing also cannot be conferred by consent.[4]In re K.K.C., 292 S.W.3d 788, 790 n. 1 (Tex.App.-Beaumont 2009, no pet. h.); H.G., 267 S.W.3d at 124.
In Texas, standing in the context of SAPCRs is governed by the family code, and a party seeking relief in such suits must plead and establish standing within the parameters of the language used in the code. See H.G., 267 S.W.3d at 124; see also TEX. FAM.CODE ANN. §§ 102.003-.007. If a party fails to do so, the trial court *345 must dismiss the suit. See In re C.M.C, 192 S.W.3d 866, 870 (Tex.App.-Texarkana 2006, no pet.). We review de novo a trial court's dismissal based on lack of standing. See Coons-Andersen v. Andersen, 104 S.W.3d 630, 633-34 (Tex.App.-Dallas 2003, no pet.); Doncer v. Dickerson, 81 S.W.3d 349, 353 (Tex.App.-El Paso 2002, no pet.).

Section 102.003(a)(9)
To establish "actual care, control, and possession" as required by section 102.003(a)(9), the section under which K.V. asserts standing, the party must demonstrate (i) more than temporary or occasional possession, though it need not be exclusive, and (ii) more than the control "implicit in having care and possession of the child." See K.K.C., 292 S.W.3d 788, 792 (control); In re M.J.G., 248 S.W.3d 753, 758-59 (Tex.App.-Fort Worth 2008, no pet.) (control); Coons-Andersen, 104 S.W.3d at 634 (possession or access). To establish the six-month requirement of "actual care, control, and possession of the child" as required by section 102.003(a)(9), the party must demonstrate the child "principally resided" with him, though the residency of the child with the party need not be continuous and uninterrupted. See TEX. FAM.CODE ANN. § 102.003(b); M.P.B., 257 S.W.3d at 808; Doncer, 81 S.W.3d at 362. Visitation in accordance with the Standard Possession Order found in section 153.312 of the family code may satisfy the standing requirement. See Doncer, 81 S.W.3d at 362. Whether a party satisfies the standing requirement under section 102.003(a)(9) is necessarily fact specific and determined on a case-by-case basis. M.P.B., 257 S.W.3d at 809.
In her first issue, K.V. challenges the court's "confirmation" that she lacked standing to sue for conservatorship. She makes two arguments. First, relying on M.P.B., 257 S.W.3d 804, and Doncer, 81 S.W.3d 349, she maintains she satisfied the standing requirement by virtue of her weekly overnight possessions of M.K.S. and possessions on "some holidays," alternate weekends, and alternate Sundays.[5] Second, and in the alternative, she argues T.S. is estopped to assert standing as a bar to this suit because of T.S.'s "actions and explicit representations to K.V. ... including the stipulated possession agreement."
In Doncer, a step-mother-Doncer-sought conservatorship of her six-year old step-son Mickey, after her husbandMickey's fatherpassed away. Doncer, 81 S.W.3d at 351. Doncer's deceased husband and his ex-wife Dickerson were joint managing conservators of Mickey. Id. Mickey's primary residence was with Dickerson, but Doncer's deceased husband had Mickey "51 percent of the time in even-numbered years and nearly 48 percent of the time in odd-numbered years" under the conservatorship agreement which awarded him slightly more periods of possession than the standard possession order.[6]Id. at 351, 352. Comparing the term "principal residence" as used in the determination of the six-month possession requirement in section 102.003(a)(9) with the term "primary residence" "as defined in a joint managing conservatorship" in connection with whom the child lives once conservators have been appointed, the court concluded the term "principal residence" means a "fixed place of abode, occupied *346 consistently over a substantial period of time, which is permanent rather than temporary." Id. at 359-61. The court further concluded Doncer had standing to sue, having established her home was Mickey's principal residence for a period of at least six months before she filed suit. Id. at 362. By virtue of the conservatorship agreement, the court reasoned, Doncer's deceased husband and Dickerson had "intended Mickey to occupy the Doncer home consistently, over a substantial period of time" and not as a "temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care." Id.
In M.P.B., a grandmother sought joint managing conservatorship of her granddaughter, twenty-one-month old M.P.B., following the death of M.P.B.'s mother. M.P.B., 257 S.W.3d at 807. M.P.B. and her mother had lived with the grandmother for three months before moving to a nearby apartment. Id. at 809. Then, over the next seventeen months, M.P.B. spent every Wednesday night, every weekend beginning "sometimes" on Thursdays and "sometimes" on Fridays, holidays, and vacations at the grandmother's house. Id. Although grandmother shared actual care, control, and possession of M.P.B. with the granddaughter's mother, a panel of this Court concluded that the grandmother had standing under section 102.003(a)(9) to seek appointment as joint managing conservator of M.P.B. because she provided M.P.B. a permanent rather than temporary residence which the granddaughter occupied consistently over a substantial period of time. Id.
Borrowing language from Doncer and M.P.B., K.V. argues her home was a "principal residence" of M.K.S. because it was "a fixed place of abode" M.K.S. occupied consistently and in a permanent fashion, in accordance with the possession agreement. Noting the Doncer court considered the conservatorship agreement, providing for slightly more visitation than the standard possession order, between Doncer's deceased husband and Dickerson as evidence of an intent that the child occupy the Doncer home consistently, K.V. points out that the possession agreement she had with T.S. was similar also to the standard possession order and evinced an intent that M.K.S. occupy K.V.'s home consistently over a substantial period of time. An intent that M.K.S. occupy K.V.'s home consistently over a substantial period of time alone, however, establishes only the six-month requirement of section 102.003(a)(9). See TEX. FAM.CODE ANN. § 102.003(b). To establish standing, K.V. also had to establish she exercised more than the control implicit in having care and possession of the child. See K.K.C., 292 S.W.3d 788, 792.
Although the "possession agreement" shared characteristics of a standard possession order, see TEX. FAM.CODE ANN. § 153.312, nothing in the record shows it was accompanied by the rights a parent conservator enjoys "at all times," see id. § 153.073, or that T.S. relinquished or shared any of her rights as a parent, see id. § 151.001(a). Other than testimony showing K.V. attended school activities and the staff at M.K.S.'s school knew K.V. would pick M.K.S. up on the days designated for possession, the record does not show K.V. had the right to confer with T.S. before T.S. made any decisions concerning M.K.S.'s health, education, and welfare; had access to M.K.S.'s medical and educational records; or could consult with school officials or with medical personnel. In fact, the record reflects T.S. discontinued the visits after K.V. accessed M.K.S.'s school records against T.S.'s directives and moved M.K.S. to another school without consulting or even informing K.V. The record *347 further reflects T.S. asked K.V. to stop paying for M.K.S.'s school and that she "made all [M.K.S.'s] decisions." Based on the record, we reject K.V.'s argument that she established by virtue of her possession agreement that she had standing to sue for conservatorship.[7]See K.K.C., 292 S.W.3d 788, 793-94 (mother's friend, who had lived with mother and child for over six months, cared for child, bathed child, attended school functions, supported child, disciplined child, comforted child, and picked child up from day care almost daily, lacked standing to sue for conservatorship where mother adequately cared for child, lived with child, and did not relinquish her parental rights, duties, and responsibilities); In re Kelso, 266 S.W.3d 586, 590-91 (Tex.App.-Fort Worth 2008, no pet.) (grandparents lacked standing to sue for conservatorship of grand child who lived primarily with them where evidence showed mother determined when child would come home or visit).
We also reject K.V.'s argument that T.S. is estopped from asserting standing as a bar to the conservatorship claim. As stated, standing cannot be conferred by estoppel. H.G., 267 S.W.3d at 124. We resolve K.V.'s first and second issues against her.

Dismissal of Other Claims

Claim for Breach of the Possession Agreement
In her second issue, K.V. asserts the court erred in dismissing her claim for breach of the possession agreement without a hearing on the merits. K.V. asserts the dismissal violated the open courts provision of the Texas Constitution and her due process rights under both the United States and Texas Constitutions. See UNITED STATES CONST. amend. XIV (due process); TEX. CONST. art. I, § 13 (open courts provision), § 19 (due process). As T.S. argued in her motion to dismiss, however, this claim is a claim for conservatorship, for which K.V. lacks standing. Because standing is a prerequisite to filing a suit, see M.P.B., 257 S.W.3d at 808, the trial court had to dismiss the claim and did not err for failing to hold a hearing on the merits. We resolve K.V.'s second issue against her.

Adoption Claims
In her third and fourth issues, K.V. asserts the court erred in dismissing her claims for adoption without a hearing on the merits and after finding she had standing. As stated, T.S. moved to dismiss K.V.'s adoption claims on the ground, among others, that she would not consent and had not consented to the adoption. Consent is a requirement, separate from standing, for adoption under family code section 162.001 and also for adoption by estoppel. See TEX. FAM.CODE ANN. § 162.001; Luna v. Estate of Rodriguez, 906 S.W.2d 576, 579 (Tex.App.-Austin 1995, no writ) (agreement to adopt essential element of adoption by estoppel). At the hearing on standing, T.S. denied consenting that K.V. could adopt M.K.S. Numerous other witnesses, many of whom testified on K.V.'s behalf, also testified they were unaware of any agreement to adopt. When asked for evidence of any agreement to adopt, K.V. testified about acts by T.S. *348 that showed, in K.V.'s opinion, an agreement to adopt. Such acts included naming M.K.S. at birth M.K.S.-V. so that M.K.S. would share K.V.'s name; holding K.V. out as M.K.S.'s mom; and, "talking about [K.V.] adopting [M.K.S.]." But K.V. stopped short of testifying to an actual agreement. Without consent or an agreement, however, K.V. cannot adopt M.K.S. and the trial court did not err in dismissing her adoption claims. We resolve K.V.'s third and fourth issues against her.
We affirm the trial court's "final judgment dismissing suit."
NOTES
[1] M.K.S.'s name at birth was M.K.S.-V. Although her name was legally changed to M.K.S. prior to the filing of this suit, the judgment of dismissal is captioned "In the Interest of M.K.S.-V."
[2] The record contains testimony that K.V. and T.S. "divided major holidays" as well as testimony that K.V. had M.K.S. only on holidays that "happened to fall" during K.V.'s period of visitation.
[3] This section was formerly section 102.005(4). See Act of Mar. 21, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 102.005(4), 1995 Tex. Gen. Laws 113, 125. The redesignation became effective September 1, 2007. See Act of June 15, 2007, 80th leg., R.S., ch. 1406, § 3, 2007 Tex. Gen. Laws 4814, 4815. Having filed her suit before the effective date, K.V.'s petition is governed by the former law. Id. § 3(b). Because the change is simply one of renumbering, however, we refer to the current code section.
[4] The exceptions, neither of which apply in this case, are found in sections 102.0035 and 102.004(a)(2) of the family code. See In re K.K.C., 292 S.W.3d 788, 790 n. 1 (Tex.App.-Beaumont 2009, no pet. h.) (citing to Texas Family Code sections 102.0035 and 102.004(a)). Under section 102.0035, a parent or expectant mother can confer standing to a prospective adoptive parent. See TEX. FAM.CODE ANN. § 102.0035. Under section 102.004(a)(2), a parent can also consent to a suit by a grandparent or relative of the child related within the third degree by consanguinity. Id. § 102.004(a)(2).
[5] K.V. does not challenge the court's implicit finding that she lacked standing under section 102.005(3)as a person having "actual possession and control of the child for not less than two months during the three month period preceding the filing of the petition."
[6] Rather than ending on Sunday, Mickey's visits with his father ended Wednesday morning. Cf. TEX. FAM.CODE ANN. § 153.312.
[7] We recognize that neither Doncer nor M.P.B. discuss the "actual care, control, and possession" requirement of section 102.003(a)(9). The Doncer court, however, noted no limitations in Doncer's husband's rights as a parent conservator or his rights during periods of possession. See Doncer, 81 S.W.3d at 351-53; see also TEX. FAM.CODE ANN. §§ 153.073, 153.074. And, the M.P.B. court noted the grandmother testified she was "significantly involved in `raising' M.P.B. ... and was `as much a primary caregiver, if not more' than [m]other." M.P.B., 257 S.W.3d at 809.