*Court of Appeals*
*Fourth Court of Appeals District of Texas*



# MEMORANDUM OPINION

No. 04-09-00795-CV

Malcolm **MONROE**,
Appellant

v.

**THE CITY OF SAN ANTONIO**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-19007
Honorable Peter Sakai, Judge Presiding

Opinion by: Phylis J. Speedlin, Justice

Sitting:  Phylis J. Speedlin, Justice
　　　　Rebecca Simmons, Justice
　　　　Steven C. Hilbig, Justice

Delivered and Filed:  August 31, 2010

AFFIRMED; TEMPORARY STAY VACATED

Malcolm Monroe appeals the trial court's order granting the City of San Antonio's motion to dismiss his suit for lack of subject matter jurisdiction. A demolition order was issued by the City's Dangerous Structure Determination Board (DSDB), and Monroe filed suit seeking injunctive relief. Because we hold that Monroe lacks standing, we affirm the trial court's dismissal of Monroe's suit and vacate our order granting a temporary stay.

**BACKGROUND AND PROCEDURAL HISTORY**

The record owner of the property located at 115 Bluebonnet St. in San Antonio, Texas is Allen Monroe. Even though Allen Monroe is the record owner of 115 Bluebonnet, several public databases, including the City tax records, Bexar County appraisal district records, and water system records list the owner of the property as "Monroe Allen." According to appellant Malcolm Monroe, his brother Allen Monroe died intestate in 1997. The record contains no evidence that any probate proceedings were initiated to declare heirship or grant an administration upon his estate. Appellant Malcolm Monroe is the current occupant of 115 Bluebonnet. Although appellant has paid some taxes and utilities on the property since 1997, title to the property has never been recorded in appellant's name.

The City received a complaint about the deteriorated condition of the house at 115 Bluebonnet, and conducted an inspection on the property on July 21, 2009. Malcolm Monroe was present at the time of the inspection. On or about September 2, 2009, written notice of a DSDB hearing concerning the property was mailed to "Monroe Allen" at 115 Bluebonnet by certified mail, return receipt requested; it was returned "unclaimed." In addition, written notice was given by publication and by posting notice on the front gate at 115 Bluebonnet.

On September 14, 2009, following a public hearing which Malcolm Monroe did not attend, the DSDB, acting pursuant to Chapter 214 of the Texas Local Government Code, found the structure at 115 Bluebonnet to be a public nuisance and ordered it to be demolished within thirty days. TEX. LOC. GOV'T CODE ANN. §§ 214.001–.005 (Vernon 2008 & Vernon Supp. 2009). A copy of the DSDB demolition order was mailed to "Monroe Allen" at 115 Bluebonnet by certified mail, return receipt requested, on September 28, 2009; it was signed for by

"Malcolm Monroe."[1]  Notice of the demolition order was also published on September 29 and September 30, 2009.

Subsequently, on November 25, 2009, Monroe filed a lawsuit in district court seeking a temporary restraining order, temporary injunction, permanent injunction, issuance of a writ of certiorari, and reversal of the DSDB demolition order.  In response, the City filed a plea to the jurisdiction asking that Monroe's suit be dismissed for lack of subject matter jurisdiction.  A hearing was held on December 11, 2009, which resulted in the trial court finding Monroe lacked standing and dismissing his lawsuit for lack of subject matter jurisdiction.  This appeal followed.

## DISCUSSION

In four issues, Malcolm Monroe argues he is entitled to seek injunctive relief to prevent the destruction of the real property at 115 Bluebonnet, even though there is a valid order by an administrative board for demolition.  The City first replies that Monroe lacks standing to challenge the DSDB demolition order because he is not an owner, lienholder, or mortgagee *of record* of the property.  We agree with the City.

Standing is a prerequisite to subject matter jurisdiction, and a trial court must have subject matter jurisdiction to decide a case.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000).  Subject matter jurisdiction cannot be conferred or taken away by consent or waiver.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993).  Whether a court has subject matter jurisdiction is a question of law.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  When the legislature confers standing by statute, the party seeking relief must allege and establish that he meets the statutory requirements.  *Tex. Dep't of Prot. and Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex.

---

[1]  At the hearing on the motion to dismiss, Malcolm Monroe denied that the signature on the certified mail receipt card was his signature.

2001) (reviewing applicable standing provisions in Texas Family Code to determine whether purported father had standing); *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied) (estoppel cannot be used to confer standing where none exists under the legislative framework). In the absence of a waiver of governmental immunity, a trial court lacks subject matter jurisdiction over a suit against a governmental entity. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). We review a trial court's ruling on a plea to the jurisdiction de novo. *See Miranda*, 133 S.W.3d at 226.

Two statutes found in the Local Government Code govern standing in the context of challenging an order related to a substandard structure. *See* TEX. LOC. GOV'T CODE ANN. § 214.0012 (Vernon 2008) (providing for judicial review from an order of a municipality); *see also* TEX. LOC. GOV'T CODE ANN. § 54.039 (Vernon 2008) (providing for judicial review from a decision of a commission panel). Both provisions specifically enumerate who may seek judicial review and limit it to three classes of individuals—"[a]ny owner, lienholder, or mortgagee of record . . . ." *Id.* §§ 214.0012(a), 54.039(a). When a statute is clear and unambiguous, we "should give the statute its common meaning." *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We read the phrase "of record" as modifying all three terms "owner, lienholder, or mortgagee" in both statutes, according to their plain language and common meaning. *Id.*; TEX. LOC. GOV'T CODE ANN. §§ 214.0012(a), 54.039(a). The legislature could have chosen to broaden the scope of persons able to challenge demolition orders, but elected not to according to the plain language used. Both statutes list three types of ownership interests that are sufficient to confer standing, and separate them by commas instead of semi-colons before adding the modifier "of record." This structure supports a reading of both statutes as requiring that an "owner, lienholder, or mortgagee" be "of record" in order to have standing. *Compare*

TEX. LOC. GOV'T CODE ANN. § 214.0012(a) (permitting "[a]ny owner, lienholder, or mortgagee of record" to appeal a municipality's order concerning a substandard structure) *with* TEX. LOC. GOV'T CODE ANN. § 211.011(a) (Vernon 2008) (permitting any of the following to appeal a municipality's zoning decision under a similar review process—"a person aggrieved by a decision of the board; a taxpayer; or an officer, department, board, or bureau of the municipality").  In addition, this reading of the two statutes is supported by the notice provisions of both statutory schemes which require the municipality to search certain designated records to determine the person to whom notice is due.  *See* TEX. LOC. GOV'T CODE ANN. § 54.035(a) (Vernon Supp. 2009) (requiring that notice by personal delivery or certified mail must be given to "the record owners of the affected property, and each holder of a recorded lien against the affected property;" and further requiring that notice also be given to "all unknown owners" by posting notice on the front door); *id.* § 54.035(e) (Vernon Supp. 2009) (stating municipality exercises "due diligence" by searching the designated records); *see also id.* §§ 214.001(c), (q) (Vernon Supp. 2009) (requiring that notice of a hearing under section 214.001 must be sent to "an owner, lienholder, or mortgagee" and that a municipality satisfies due diligence in determining the identity and address of "an owner, a lienholder, or a mortgagee" if it searches the designated records).  Reading sections 54.039 and 214.0012 within the context of their respective statutory schemes, we must assume the legislature used the phrase "any owner, lienholder, or mortgagee *of record*" because it intended to limit standing to persons with a property interest of record.  *See Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 382 (Tex. App.—San Antonio 1990, writ denied) (we must presume that every word used, and every word excluded, by legislature was for a purpose).

Malcolm Monroe has not shown that he is an "owner, lienholder, or mortgagee of record" of 115 Bluebonnet Street. Although he *may* be an heir at law[2] of the owner of record, his brother Allen Monroe, appellant has not pled and proved that he is an "owner of record" of the property within the meaning of sections 54.039 and 214.0012. Because he fails to meet the statutory requirements, Monroe lacks standing to challenge the demolition order in this case. Given our disposition of the issue of standing, we need not address the remaining issues raised on appeal.

Accordingly, we affirm the trial court's dismissal of Monroe's lawsuit. Our order granting a temporary stay in this cause is hereby vacated.

Phylis J. Speedlin, Justice

---

[2] Malcolm Monroe represents that his brother died intestate in 1997 and that he is his brother's heir, but there is no evidence in the record to support these assertions.