

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00522-CV

**IN THE INTEREST OF R.P. AND R.A.P.**, Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CI-25835
Honorable Monique Diaz, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Lori Massey Brissette, Justice
    Velia J. Meza, Justice

Delivered and Filed: March 5, 2025

VACATED AND DISMISSED

In an all-too-common turn of events, Father and Grandmother battle over access to children who have lost their Mother. Both parties appeal a judgment which grants Grandmother possession and access to the children, R.P. and R.A.P.,[1] while denying her request for conservatorship. We vacate and dismiss for lack of jurisdiction.

### BACKGROUND

Grandmother filed an original petition seeking possession or access to her two grandchildren on December 21, 2021. Father filed a counterpetition on January 13, 2022, seeking,

---

[1] We refer to the children by their initials and family members by their relationship to the children. *See* TEX. FAM. CODE § 109.002(d).

among other things, a judgment declaring his status as the child's sole managing conservator. The trial court rendered temporary orders on February 14, 2022, appointing Grandmother as a "nonparent" possessory conservator under a standard possession order.

Following a trial, the court signed a judgment granting Grandmother possessory conservatorship. Father timely filed a request for findings of fact and conclusion of law and a motion to modify the judgment. The trial court granted Father's motion in part and, on July 28, 2023, signed a modified judgment granting Grandmother possession and access to the children but removing the designation of Grandmother as "conservator."

Father and Grandmother each appeal the modified judgment. Father argues Grandmother lacked standing to seek possession or access to the children and that Grandmother failed to overcome the fit-parent presumption. Grandmother argues the trial court erred by modifying the judgment.

### STANDING

Standing is a component of subject-matter jurisdiction and must be established in order to maintain a lawsuit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a court has subject-matter jurisdiction is an issue of law, which is reviewed *de novo. Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 646 (Tex. 2004). Absence of standing deprives the trial court of subject-matter jurisdiction and renders any action of the trial court void. *In re K.G.,* 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, no pet.). Subject-matter jurisdiction is an issue that may be raised for the first time on appeal and it may not be waived by the parties. *Tex. Ass'n of Bus.,* 852 S.W.2d at 445.

The plaintiff has the initial burden of alleging facts that affirmatively demonstrate jurisdiction. *Jasek v. Tex. Dep't of Family and Protective Servs.,* 348 S.W.3d 523, 528 (Tex.

App.—Austin 2011, no pet.). The Texas Legislature has provided a comprehensive statutory framework for standing in suits involving the parent-child relationship. *In re K.G.,* 267 S.W.3d at 124. When standing is conferred by statute we use that statutory framework to determine whether a particular party has standing. *Jasek,* 348 S.W.3d at 528. The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *In re H.G.,* 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008) (op. on reh'g).

The issue presented is whether Grandmother met the standing requirements for grandparent access. *See In re Derzapf,* 219 S.W.3d 327, 332 (Tex. 2007) (per curiam) (concluding that because trial court granted relief under grandparent access provision, standing had to be determined under that provision and not under general provisions for filing a Suit Affecting the Parent–Child Relationship). Grandmother argues she has standing because she is a biological grandparent and that she must do no more to establish standing. We disagree.

Grandparents must meet specific standing requirements to pursue a claim seeking access or possession. "Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153." TEX. FAM. CODE § 102.004(c); *see* TEX. FAM. CODE §§ 153.432–.434 (governing grandparent access). Section 153.432 requires that a grandparent attach an affidavit "that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being." *See* TEX. FAM. CODE § 153.432(c). The court must then determine if the "facts stated in the affidavit, if true, would be sufficient to support the relief authorized under [s]ection 153.433." *Id.* Section 153.433 allows a court to order reasonable possession or access to a grandchild if (1) at the time the relief is requested, at least one parent has not had their rights terminated, (2) the grandparent overcomes the fit parent presumption by proving by a

preponderance of the evidence that denial of possession or access would significantly impair the grandchild's physical health or emotional well-being, and (3) the grandparent requesting possession or access is a parent of the parent of the grandchild and that parent of the grandchild: (A) has been incarcerated or in jail during the three-month period preceding the petition, (B) has been found by a court to be incompetent, (C) is dead, or (D) does not have actual or court-ordered possession of or access to the grandchild. TEX. FAM. CODE § 153.433(a).

While the affidavit Grandmother attached to her petition does not contain the significant impairment allegation required by section 153.432, it does state: (1) that Father and Mother would get into fights, causing Mother to "show up at [Grandmother's] doorstep, crying," and bringing the older child with her, (2) that Grandmother babysat the younger child while Mother worked, (3) that Grandmother has a very strong bond with the children who are emotionally attached to her, (4) that, following the death of Mother, Father is "alienating" the children and "telling the children [Grandmother] no longer love[s] them . . . causing emotional harm [to] the children . . . because now they are essentially suffering the loss of two people,"[2] and (5) that Grandmother had only been able to see the children twice in the three months since Mother passed away. At the hearing on her petition, Grandmother testified she was the primary caregiver for the children because Mother worked from 5:30am until 8:00pm and Father slept until the early afternoon. Grandmother testified that the two children spent all their holidays with her prior to Mother's death: Father "was welcome, but he didn't come."

---

[2] At the hearing, Father denied he intended to alienate Grandmother from the children:

> They need -- I want my kids to have a healthy relationship with their grandmother. You know, I'm sorry what -- what happened to her daughter. I miss her so much, and I just -- you know, I'm never going to keep her away from the kids.

Furthermore, Father testified when he returns to work, he "would love to have [Grandmother] babysit the kids."

Grandmother testified that her relationship with Father became strained after Mother's death:

> [S]omeone called CPS and [Father] thought it was us, so he just got to the point where he wasn't going to bring the boys over. But we did not communicate with them by phone or even see them at all. This is why I had to get a lawyer because it was getting out of hand.

Grandmother opined that if visitation were not court-ordered and geographical restrictions not put in place, it would be "mentally, emotionally" detrimental to her and the children.

Significant impairment is a "high threshold." *In re Scheller*, 325 S.W.3d 640, 643–44 (Tex. 2010) (orig. proceeding). While Grandmother's allegations indicate a tragic breakdown between a grieving Father and his mother-in-law—a breakdown that Grandmother attests is causing the children "emotional harm" and "emotional trauma," she neither alleges *significant impairment* of the children's physical health or emotional well-being as required by statute nor does she rebut the presumption that Father is a fit parent. *See* TEX. FAM. CODE § 153.432(c).

The facts of this case are regrettably all too common. In *Scheller*, the Texas Supreme Court considered a situation not unlike the present case. A grandfather sought possession and access after his daughter died. *Id.* at 641. In the year following her death, the grandfather assisted his son-in-law with caring for the children. *Id.* Grandfather's relationship with his son-in-law became strained and, eventually, the grandchildren stopped visiting. *Id.* at 641–42. Grandfather sued, alleging that the children displayed anger, wetted their beds and experienced nightmares, and the grandfather elicited third-party testimony that denying access would impair the children's physical or emotional development. *Id.* at 643. The Court explained:

> [T]hat evidence is not enough to satisfy [the grandfather's] hefty statutory burden, and we hold that the trial court abused its discretion in issuing a temporary order for access to and possession of the children. . . . [T]here is nothing in the record here to indicate anything more substantial than the children's understandable sadness resulting from losing a family member and, according to the [grandfather], missing their grandparents.

*Id.* at 643–44 (internal citation removed); *see also Derzapf*, 219 S.W.3d at 330 (holding no significant impairment because there was no evidence showing that the children experienced depression, behavior problems, or anything more than "lingering sadness" from being separated from their grandparents, despite testimony from expert witness that it would be unhealthy to separate the children from their grandparents); *In re A.G.*, No. 02-24-00548-CV, 2025 WL 294159, at *6 (Tex. App.—Fort Worth Jan. 24, 2025, orig. proceeding) (collecting cases and holding that grandmother lacked standing where her affidavit failed to establish a present risk to the children following the death of their father).

We are also mindful of the constitutional protections afforded parents concerning the care, custody, and control of their children. The U.S. Constitution "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel v. Granville*, 530 U.S. 57, 72–73 (2000) (plurality op.). In *Troxel*, the United States Supreme Court held that a trial court violated a parent's constitutional rights by granting grandparent access where there was no evidence that the parent was unfit, that the children's health and well-being would suffer, or that the parent intended to exclude grandparent access entirely. *Id.* at 68–71; *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (observing "no meaningful distinction" between due course of law protections under Texas Constitution and due process of law protections under U.S. Constitution).

We are bound by this overwhelmingly consistent precedent from the Texas Supreme Court and the United States Supreme Court, as well as the statutes duly enacted by the Texas Legislature, establishing a high bar to state interference with the parent-child relationship. We hold Grandmother did not carry her burden to allege facts affirmatively showing her standing to sue for

possession and access under Chapter 153 of the Texas Family Code.[3] Father's first issue is sustained.

## CONCLUSION

Because Grandmother lacked standing, the trial court did not have subject-matter jurisdiction over her claims. Accordingly, we vacate the trial court's judgment and dismiss the cause for lack of jurisdiction. *See Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999); *see also Chimp Haven, Inc. v. Primarily Primates, Inc.*, 281 S.W.3d 629, 632 (Tex. App.—San Antonio 2009, no pet.) ("If the trial court lacked jurisdiction, we have jurisdiction only to set aside the judgment of the trial court and to dismiss the cause.").

Velia J. Meza, Justice

---

[3] Because it would not affect our conclusion in this case, we do not address whether the scope of the statutory standing inquiry is limited to review of the affidavit or whether we may consider evidence adduced at the hearing. *See* TEX. FAM. CODE § 153.432(c); TEX. R. APP. P. 47.1.