**ECKLAND CONSULTANTS, INC., Appellant,**

v.

**RYDER, STILWELL INC., Cove Properties, Ltd., Ryder, Stilwell Properties, Inc., Individually, and Ryder, Stilwell Properties, Inc., Derivatively for Cove Properties, Ltd., Appellees.**

No. 01–01–00194–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 1, 2004.

Charles T. Fraizer, Jr., Cowles & Thompson, P.C., Dallas, for Appellant.

Steven A Fleckman, Austin, for Appellees.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, Jr., Justice.

After a bench trial, the trial court awarded appellees, Ryder, Stilwell Inc. (RS); Cove Properties, Ltd.(Cove); Ryder, Stilwell Properties, Inc.(RSP), individually and derivatively for Cove (collectively "the Plaintiffs"), $1,389,711.30 on their breach of contract claim against appellant, Eckland Consultants, Inc., which was based on Eckland's performance of an inspection of an apartment complex and its preparation of a property condition report.

In 11 points of error, Eckland challenges the judgment and argues that (1) the trial court erred in awarding judgment for RS; (2) the trial court erred in awarding judgment for RSP; (3) the trial court erred in finding that Cove was a party to the contract; (4) Cove was not a third-party beneficiary of the contract; (5) Cove did not

have standing to sue Eckland; (6) the Eckland–RS contract was unambiguous as to standing; (7) Cove was not an "affiliate" of RS; (8) Eckland did not give prior written consent that RSP and/or Cove could rely on its property condition report; (9) the trial court only made findings of fact on the breach of contract cause of action; (10) the evidence was legally and factually insufficient to support DTPA and breach of warranty causes of action; and (11) in the event that this Court reverses and renders a take-nothing judgment, Eckland is entitled to recover its attorneys' fees and expenses.[1] We affirm the trial court's judgment.

### Factual and Procedural Background

On February 23, 1996, RS, a corporation and holding company that provides investment and management services to its clients, entered into an earnest money contract with La Maison at Lakeside Residence, Ltd. to purchase an apartment complex for $3.85 million. The contract was signed by La Maison's president and by R.J. Considine, Jr., in his capacity as RS's senior vice president.

On March 27, 1996, RSP, a wholly-owned subsidiary of RS, entered into a contract with Eckland, wherein Eckland agreed to inspect and to provide a property condition report and phase one environmental assessment report of the 132–unit apartment complex. The contract was signed by Eckland's executive vice president and by R.J. Considine, Jr., in his capacity as RSP's president. The contract

was in letter form, with a nine-page attachment outlining the details. The contract was sent to Considine, as president of RS, but was signed by him as president of RSP. The contract stated that

> [i]t is agreed that the information provided by [Eckland] is for the exclusive use of [RS], Piper Jaffray, or its affiliated companies, and Holliday, Fenoglio, Dockerty and Gibson, and no other party shall have any right to so rely on any service provided by [Eckland] without prior written permission.[2]

The apartments were being sold "as is," and Considine testified that, to him, that meant that "all faults and flaws and so on of the building were my responsibility to determine.... [T]he seller was making no warranty on the condition of the property." Considine testified that he informed Eckland that he "needed to have a thorough evaluation of the large ticket items ... things like the roof, the base structure, the mechanicals, appliances, HVAC." Eckland required an additional sum for the HVAC[3] inspection, but not for its evaluation of the structural soundness of the complex. Considine further testified that, if Eckland's reports had reflected unfavorable environmental tests or significant structural problems in the complex, he was not obligated to close on the property.

On April 1 and 3, 1996, Cove was created, and its certificate of limited partnership was signed by its two general partners—one of whom was RSP. The certificate of limited partnership was filed with the Secretary of State on April 8.

---

1. The Plaintiffs filed a notice of appeal and paid a filing fee in this case. However, these parties do not present any points of error challenging the trial court's judgment. Accordingly, their appeal is dismissed. *See* Tex. R.App. P. 42.3(b).

2. Piper Jaffray represented RS's lender, and Holliday, Fenoglio, Dockerty & Gibson was

the mortgage broker that had recommended Eckland to RS.

3. Although "HVAC" was not defined in the contract, it is generally accepted to mean "heating, ventilating, and air conditioning." *See Ebasco Constructors, Inc. v. Rex*, 923 S.W.2d 694, 694 (Tex.App.-Corpus Christi 1996, pet. denied).

That same day, Eckland sent RS the property condition report. Among other things, the report indicated that Eckland's licensed architect "did not observe any conditions that would indicate widespread deficiencies in the structural, mechanical, or electrical system of the improvements." The "Procedures and Limitations" section of the report provided, as follows:

This Report is written for the exclusive use of [RS], Piper Jaffray or its affiliated companies, American Select Portfolio, Inc., and Holliday, Fenoglio Dockerty & Gibson, Inc., their affiliates, designees and assignees, rating agencies, and prospective bondholders. No third party or other persons may use or rely on the information contained herein without the written consent of [Eckland].

On April 10, 1996, RS assigned Cove its rights and interests in the earnest money contract with La Maison for the purchase of the apartment complex. A purchase price of $3.85 million was agreed upon, and La Maison and Cove closed the sale a couple of days later.

In March and April 1997, after the complex's on-site manager had received tenant complaints of falling drywall and had noticed a tilting floor in one building, an architectural firm was hired to perform further inspections of the complex. Major structural problems were discovered in the building. A complete structural analysis revealed deflection and rolling of certain structural-support beams underneath the flooring of several buildings. Cove received bids from several structural engineers indicating that it would cost more than $1 million to repair the complex. Considine testified that, on at least one occasion, a couple of the buildings had to be evacuated for fear that they would collapse during a strong wind storm. On October 5, 1998, Cove sold the property for $3,052,257.18.

On February 20, 1998, Cove and RS sued Eckland for, among other things, breach of contract.[4] On November 20, 2000, the trial court signed a final judgment awarding the Plaintiffs $735,242.82 in damages and $202,040.68 in pre-judgment interest. Pursuant to a rule 11 agreement, the judgment also awarded $312,427.80 in attorneys' fees and $140,000 in expenses. Appellate attorneys' fees and post-judgment interest were also awarded.

In conjunction with its judgment, the trial court made the following findings of fact and conclusions of law:

**Findings of Fact**

1. On February 23, 1996, [RS] entered into an earnest money contract to purchase La Maison at Lake Cove Apartments (sometimes referred to as "La Maison") (PX 1).

2. On April 10, 1996, [RS] assigned the earnest money contract for the purchase of La Maison to [Cove] at the price of $3,850,000.00 (PX 56).

3. [RSP] served as the general partner of [Cove].

4. On April 15, 1996, [Cove] purchased La Maison at Lake Cove Apartments paying a total purchase price, including costs, of $4,024,030.44 (PX 8).

5. On March 27, 1996, [RS], [Cove], and [RSP] contracted with [Eckland] for a property condition assessment to be performed on La Maison at Lake Cove Apartments (PX 2).

---

4. The original petition named several defendants. All defendants, except Eckland, were nonsuited before trial. Similarly, Eckland brought numerous cross-claims against its co-defendants, but all cross-claims were nonsuited during trial.

6. [RS], [Cove], and [RSP] were parties to the contract for the property condition assessment with [Eckland].

7. [Cove] and [RSP] were intended beneficiaries of the contract for [the] property condition report with [Eckland].

8. [Cove] and [RSP] were entitled to rely on the property condition report issued by [Eckland] as they were the affiliates, designees, and assignees of [RS] (PX 5, 6).

9. The limiting language in the Eckland March 26, 1996 contract does not preclude recovery by [Cove] because Cove is an assignee of [RS]; [Cove] is an affiliated company of [RS] and the affiliated language in the contract extends to [RS]; and, [Cove] is an intended third party beneficiary of the contract.

10. The buildings at La Maison contained serious structural defects at the time of Eckland's inspection on March 29, 1996, and at the time of the purchase by [Cove] on April 15, 1996.

11. Eckland failed to properly evaluate the visible building structures, thus failing to comply with the contract.

12. The failure to comply was a proximate cause of damages to [Cove] because James Considine would have canceled the deal or renegotiated the price of the apartments prior to the April 15, 1996 closing deadline had he known of the condition of the property as detectable by a proper visible inspection.

13. Plaintiffs sold La Maison on October 5, 1998 for $3,052,257.18, incurring closing costs associated with the sale of $145,931.22, netting Plaintiffs $2,906,325 (PX 22).

14. [Cove] has been damaged $797,742.82 (diminution of value represented by the purchase price of $3,850,000.00 less the net sales price of $3,052,257.18), resulting from the failure to comply, and the damages are a natural, probable, and foreseeable consequence of Eckland's failure to comply.

15. The reasonable and necessary cost to repair La Maison, at all material times from April 15, 1996 through the time of sale, was $1,557,057.00 (PX 15).

16. The difference between the price paid for La Maison by [Cove] and the value it received as of April 15, 1996, was $1,557,057.00 (PX 15).

17. The Court finds that La Maison could have been repaired without economic waste or impairing the structure as a whole.

18. The difference in the value of La Maison as represented, and the actual value received by [Cove] as of April 16, 1996, was $1,557,057.00 (PX 15).

19. Pursuant to [the] agreement of the parties, Plaintiffs shall recover from Eckland their reasonable and necessary attorneys' fees in the amount of one-third of the total recovery. [Eckland] shall pay $50,000.00 to Plaintiffs for the cost of appealing this case to the Houston Court of Appeals, and $25,000.00 for the cost of appealing the case to the Texas Supreme Court should [Eckland] appeal the judgment of this Court, and should Plaintiffs prevail on said appeals.

20. Pursuant to agreement of the parties, Plaintiffs shall recover from Eckland their reasonable and nec-

essary legal expenses in the amount of $140,000.00.

## Conclusions of Law

1. The assignment of the earnest money contract for the purchase of La Maison on April 10, 1996 from [RS] to [Cove] was a valid, effective assignment.

2. On March 27, 1996, [RS], [Cove], and [RSP] contracted with [Eckland] for a property condition assessment to be performed on La Maison at Lake Cove Apartments (PX 2).

3. [RS], [Cove], and [RSP] were parties to the contract for the property condition assessment with [Eckland].

4. [Cove] and [RSP] were intended beneficiaries of the contract for [the] property condition report with [Eckland].

5. [Cove] and [RSP] were entitled to rely on the property condition report issued by [Eckland] as they were the affiliates, designees, and assignees of [RS] (PX 5, 6).

6. The limiting language in the Eckland March 26, 1996 contract does not preclude recovery by [Cove] because Cove is an assignee of [RS]; [Cove] is an affiliated company of [RS] and the affiliated language in the contract extends to [RS]; and, [Cove] is an intended third party beneficiary of the contract.

7. Eckland failed to properly evaluate the visible building structure, thus failing to comply with the contract.

8. Pursuant to [the] agreement of the parties, Plaintiffs shall recover from Eckland their reasonable and necessary attorneys' fees in the amount of one-third of the total recovery. [Eckland] shall pay $50,000.00 to Plaintiffs for the cost of appealing this case to the Houston Court of Appeals, and $25,000.00 for the cost of appealing the case to the Texas Supreme Court should [Eckland] appeal the judgment of this Court, and should Plaintiffs prevail on said appeals.

9. Pursuant to agreement of the parties, Plaintiffs shall recover from Eckland their reasonable and necessary legal expenses in the amount of $140,000.00.

10. Prejudgment interest shall be awarded from date of the filing of this case, February 20, 1998, at a rate of 10% simple interest. *Johnson v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex.1998).

In 11 points of error, Eckland appeals the trial court's judgment.

## Standard of Review

In an appeal from a bench trial, a trial court's findings of fact have the same weight as a jury's verdict. *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, writ denied). When challenged, findings of fact are not conclusive if, as here, there is a complete reporter's record. *Id.* When there is a reporter's record, the trial court's findings of fact are binding only if supported by the evidence. *Id.* If the findings are challenged, the court of appeals will review the sufficiency of the evidence supporting the findings. *See State Bar of Tex. v. Roberts*, 723 S.W.2d 233, 235 (Tex.App.-Houston [1st Dist.] 1986, no writ). We review the legal and factual sufficiency of the evidence supporting a trial court's findings of fact by the same standards that we apply to reviewing the legal or factual sufficiency of the evidence supporting jury findings.

*Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

When an appellant challenges the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In conducting a no-evidence review, an appellate court must "view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). A no-evidence point may be sustained only when the record discloses one of the following: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998).

If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). But, if the evidence offered to prove a vital fact is so weak that it does nothing more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (quoting *Transp. Ins.*

*Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

In reviewing a factual-sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

### Breach of Contract

■ The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

### Valid Contract

In points of error three, four, five, six, and seven, Eckland contends that the trial court erred when it implicitly found that Cove had standing to bring a breach of contract claim because (1) Cove was not a party to the contract, (2) Cove was not a third-party beneficiary to the contract, (3) RS's assignment of the earnest money contract did not give Cove standing to sue Eckland, (4) the Eckland–RS contract was not ambiguous as to standing, and (5) Cove was not an "affiliate" under the contract.

■ As noted above, on March 27, 1996, RSP entered into the contract with Eckland. Less than two weeks later, Cove's certificate of limited partnership was filed

with the secretary of state. On appeal, Eckland argues that Cove could not have been a party or an intended third-party beneficiary of the March 27 contract because it did not exist at that time. Eckland argues that the following passage from the contract prohibits Cove from having standing:

It is agreed that the information provided by [Eckland] is for the exclusive use of [RS], Piper Jaffray, or its affiliated companies, and Holliday, Fenoglio, Dockerty and Gibson, and *no other party shall have any right to so rely on any service provided by [Eckland] without prior written permission.*

(Emphasis added.) Eckland argues that, pursuant to this provision of the contract, only (1) RS; (2) Piper Jaffray or its affiliated companies; and (3) Holliday, Fenoglio, Dockerty and Gibson had the right to rely on Eckland's services and had standing to sue for any alleged breach of the contract. Eckland argues that Cove had no such right. We disagree.

◼ The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party. *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 240 (Tex.App.-Corpus Christi 1994, writ denied). This doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which it had acquiesced, or from which it had accepted a benefit. *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 765–66 (Tex.App.-Texarkana 1992, no writ); *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.,* 817 S.W.2d 160, 164 (Tex.App.-Houston [14th Dist.] 1991, no writ); *El Paso Nat'l Bank v. Southwest Numismatic Investment Group, Ltd.,* 548 S.W.2d 942, 948 (Tex.Civ.App.-El Paso 1977, no writ). Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. *Mexico's Indust., Inc. v. Banco Mexico Somex, S.N.C.,* 858 S.W.2d 577, 581 n. 7 (Tex.App.-El Paso 1993, writ denied); *Turcotte v. Trevino,* 499 S.W.2d 705, 712–13 (Tex.Civ.App.-Corpus Christi 1973, writ ref'd n.r.e.). Unlike equitable estoppel, quasi-estoppel requires no showing of misrepresentation or of detrimental reliance. *Vessels,* 823 S.W.2d at 765; *Steubner Realty,* 817 S.W.2d at 164; *El Paso Nat'l Bank,* 548 S.W.2d at 948.

◼ Under the circumstances presented, Eckland is estopped from arguing that Cove has no standing to bring this action.[5] Here, Eckland accepted the benefits of its contract to provide the property condition report. However, its current interpretation of the contract language in defense of this lawsuit is inconsistent with its prior conduct. Although Eckland now maintains that only the parties named in the contract could rely on and had standing to sue based on its subsequent report, this position is clearly inconsistent with the language it included in its report. For example, American Select Portfolio, Inc. *was not* named in the contract as one of the entities that could rely on Eckland's work product, but Eckland identified it as such an entity in the report. Similarly, while Cove *was not* included in the contract as one of the entities that could rely on the work product, as discussed in greater detail below, Eckland identified Cove as such

5. In paragraph I of their "Supplemental Answer to Defendant Eckland Consultants, Inc's Sixth Amended Original Answer, Counterclaim and Cross Claims," the Plaintiffs asserted the affirmative defense of estoppel to Eckland's assertion that Cove lacked standing to bring a suit for breach of contract. A general plea of estoppel is sufficient to raise the affirmative defense of quasi-estoppel. *See Steubner Realty,* 817 S.W.2d at 164.

an entity in its report by referring to affiliates, designees, and assignees of RS. As noted above, the "Procedures and Limitations" provision of the report reads as follows:

> This Report is written for the exclusive use of [RS], Piper Jaffray or its affiliated companies, *American Select Portfolio, Inc.*, and Holliday, Fenoglio Dockerty & Gibson, Inc., *their affiliates, designees and assignees, rating agencies, and prospective bondholders.* No third party or other persons may use or rely on the information contained herein without the written consent of [Eckland].

(Emphasis added.) Accordingly, we hold that Eckland cannot now argue that the contract language deprives Cove of standing to bring this action.[6]

■ Nevertheless, Eckland contends that we cannot refer to the property condition report to resolve whether Cove has standing to sue for breach of contract unless we first hold that the contract is ambiguous. We disagree. While the rules of contract interpretation generally prohibit the reference to parol or other evidence beyond the four corners of a contract unless the contract is first found to be ambiguous, a court may look at a party's representations and actions to determine the issue of estoppel. *See Steubner Realty,* 817 S.W.2d at 164.

In its findings of fact, the trial court found that Cove and RSP were intended beneficiaries of the contract and that they were entitled to rely on Eckland's property condition report because they were affiliates, designees, and assignees of RS. Eckland contends that the trial court erro-

neously concluded that the report's language pertaining to "affiliates, designees and assignees" applies to Cove. Eckland argues that the "only logical reading" of this phrase is that it modifies only American Select Portfolio and Holliday. We disagree. We must next determine whether the trial court erred when it found that Cove was an affiliate, designee, and assignee.

■ "Affiliate" is not defined in the contract or in the report, so its ordinary meaning must be used. *Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). It is generally defined as a "corporation that is related to another corporation by shareholdings or other means of control," BLACK'S LAW DICTIONARY 59 (7th ed.1999), and as a "company effectively controlled by another or associated with others under common ownership or control." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (1971).

It is undisputed that RSP was a general partner in Cove's limited liability partnership, and that, as a general partner, RSP controlled the business affairs of Cove. Eckland contends that, despite the fact that RSP is a wholly-owed subsidiary of RS, a finding that Cove is an affiliate of RSP does not mean that Cove is an affiliate of RS. We disagree. We hold that the trial court did not err in finding that Cove was an affiliate of RS. Thus, there was a valid contract between Eckland and Cove.

Accordingly, we hold that the trial court did not err when it implicitly found that Cove had standing to assert a breach of contract claim against Eckland.

---

6. Under Eckland's current argument as to the effect of the contract language, RSP, the *party that signed the contract and paid for Eckland's services,* also could not have relied on the report and did not have standing to sue Eckland for any errors in the report. Although RSP is not identified in the contract or in the report as an entity that could rely on the report, RSP, and not RS, actually signed the contract and paid Eckland for its services.

## Performance by the Plaintiffs

There is no allegation that the Plaintiffs failed to compensate Eckland for the services that it provided. Absent such an allegation, we must presume that there was adequate performance by the Plaintiffs. Thus, there was performance.

## Breach of the Contract

In its findings of fact and in its conclusions of law, the trial court determined that "Eckland failed to properly evaluate the visible building structures, thus failing to comply with the contract." On appeal, Eckland does not contest this determination. Thus, there was a breach.

## Damages

In points of error one and two, Eckland contends that the judgment, as to RS and RSP, should be reversed because the evidence was legally and factually insufficient to support a finding of any damages as a result of Eckland's conduct.

Eckland seeks reversal of the judgment because neither RS nor RSP sustained independent damages from Eckland's performance of the contract. The judgment ordered Eckland to pay "Plaintiffs [RS], [Cove], [RSP], Individually, and [RSP], derivatively for [Cove]," $735,242.82 [7] as damages and $202,040.68 as pre-judgment interest. In its findings of fact, the trial court noted that Cove had been damaged by the diminution of value between the purchase price of the complex less the net sales price. The judgment, however, is silent as to any damages sustained by RS or RSP.

 A breach of contract claim cannot survive if the plaintiff was not dam-

aged by the breach. See *Valero*, 51 S.W.3d at 351. Accordingly, the trial court erred in awarding judgment for RS and RSP in the absence of a finding that they incurred damages as a result of Eckland's contract breach. However, Eckland has failed to show how it was harmed by the error. Eckland does not argue that the amount of the judgment was erroneous. It simply argues that RS and RSP should not be prevailing parties. Because we have held that Cove had standing to sue for and recover contractual damages from Eckland, the amount of the judgment against Eckland would not change, only the number of parties entitled to recover under the judgment. Therefore, Eckland cannot show that it was harmed by the trial court's error.[8]

We hold that the trial court erred in rendering judgment that, in the absence of a damage finding, RS and RSP were entitled to damages. We further hold that this error was harmless.

We overrule Eckland's points of error one through seven.

## Written Consent

In point of error eight, Eckland contends that it did not give written consent that RSP and Cove could rely on the information in the report. Because we have held that the limitations' paragraph of the report constituted a clarification of the contract, we need not address this point of error.

## Other Causes of Action

In points of error nine and ten, Eckland contends that the trial court did not make

7. The amount awarded in the judgment is $62,500 less than the amount of damages found by the trial court in its findings of fact. Neither party references this discrepancy in their appeal; therefore, we need not address this inconsistency. *See* TEX.R.APP. 33.1.

8. Although the Plaintiffs could arguably have been harmed by this error, as we have previously stated, they abandoned their appeal by failing to raise any issues on appeal.

findings of fact on the non-breach-of-contract causes of action and that there was legally and factually insufficient evidence to support any "omitted elements" of the DTPA and breach of warranty causes of action.

The Plaintiffs sued Eckland for breach of contract, negligence, negligent misrepresentation, DTPA violations, unconscionable conduct, and breach of implied and express warranties. Before trial, the trial court granted Eckland summary judgment on the negligence and negligent misrepresentation claims. Therefore, at the time of trial, the live claims consisted of breach of contract, DTPA violations, unconscionable conduct, and breach of implied and express warranties. The record is clear that the Plaintiffs only pursued their breach of contract claims against Eckland at trial. The trial court's findings and conclusions only address the breach of contract claims. Therefore, we must presume that the Plaintiffs abandoned their other claims. Furthermore, the Plaintiffs did not respond to Eckland's points of error nine and ten, further emphasizing their decision to pursue only their breach of contract claim.

We overrule points of error nine and ten as moot.

## Attorneys' Fees

In point of error 11, Eckland asserts that, in the event that we reverse the judgment of the trial court and render judgment that the Plaintiffs take nothing from Eckland, Eckland is entitled to recover its attorneys' fees and expenses from one or more of the Plaintiffs. Because we have not found any reversible error in the trial court's judgment, we overrule point of error 11.

## Conclusion

We affirm the trial court's judgment.