**REVERSE and REMAND and Opinion Filed May 29, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-01211-CV

**PACK PROPERTIES XIV, LLC AND T&T REALTY CORP., Appellants**
**V.**
**REMINGTON PROSPER, LLC, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04301-2021**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

Appellants Pack Properties XIV, LLC (Pack Properties) and T&T Realty Corp. (T&T) appeal the trial court's February 20, 2023 Final Judgment, which granted the summary judgment motions of appellee Remington Prosper, LLC (Remington) and denied the partial summary judgment motion of appellants. The case involves a contract for the sale of real property (the Contract) and allegations—by both the seller and the purchaser—of breach of that Contract. Appellants argue the trial court's summary judgment rulings in favor of Remington were erroneous, identifying five subsidiary issues for our review: whether appellants are affiliates of

each other; whether—if T&T breached the parties' agreement by assigning it to a non-affiliate without Remington's consent—that breach was immaterial and whether that breach was cured by appellants' offer to rescind the assignment; whether Remington is barred from enforcing the consent-to-assignment requirement by doctrines of waiver or estoppel; and whether Remington is entitled to attorney's fees. We conclude that no party established that it was entitled to judgment as a matter of law, so we reverse the trial court's Final Judgment and remand this case for further proceedings.

## Background

Lou Lebowitz wished to own and operate a Subaru car dealership in Prosper, Texas, and in 2019 he was successful in obtaining a Letter of Intent (LOI) from Subaru of America, Inc. The LOI identified the "dealership entity" as SLJ/SOP, Ltd. (SOP), an entity owned 100% by Lebowitz, and it identified the conditions that Lebowitz or SOP would need to fulfill to open such a dealership. For our purposes, those conditions included (1) purchasing an acceptable site for the dealership, and (2) associating with a partner who was an experienced car dealer, who would own a significant percentage of the dealership, and who would provide experienced management for the dealership.

To fulfill the first condition, Lebowitz identified property on State Highway 380 in Prosper (the Property) that was owned by Remington. Subaru approved the Property for the site of the dealership, and T&T (another entity owned 100% by

Lebowitz) signed the Contract with Remington to purchase the Property for approximately $7.3 million.

As to the second relevant condition in the LOI, Lebowitz developed a relationship with Sam Pack, who owned multiple dealerships himself and who had decades of experience in car dealerships. The two men agreed to work together to open the Subaru dealership. Together they created a complicated web of business entities and relationships to participate in what they call their "Enterprise." Through two of those entities, the men entered into a Mutual Acquisition and Development Agreement (the MADA). One party to the MADA was Lebowitz's SOP; the other was a Pack-owned entity, Pack Automotive Group, Ltd. (PAG). The MADA included the following agreements:

- T&T would assign its interest in the Contract to Pack Prosper[1];

- PAG would take over payments under the Contract, including reimbursing T&T for its initial deposit;

- Pack Properties and SOP would enter into a lease, in which Pack Properties agrees to construct the Subaru dealership on the Property pursuant to the requirements of the LOI;

- PAG would enter into an Operating Agreement with SOP; and

- PAG would pay $1,750,000.00 in cash in exchange for the assignment to it of 49% of the general and limited partnership interests in SOP.

---

[1] In April 2021, Pack Prosper changed its name to Pack Properties XIV, LLC; the name change has not affected any party's position in this litigation. After this initial reference to Pack Prosper, we will continue referring to the appellant assignee entity as Pack Properties.

Following execution of the MADA, T&T assigned its interest in the Contract to Pack Properties. Approximately one month later, Lebowitz informed Stanley Graff, owner of Remington, about the assignment to Pack Properties; appellants' lead transactional lawyer, Roy True, likewise gave the assignment information to Remington's transactional lawyer, Robert Allen.

The assignment to Pack Properties implicated a provision of the Contract that stated:

> Purchaser may assign this Contract to an affiliate or entity under common control with Purchaser with notice to, but without the consent of Seller. Any other assignment shall require Seller's prior written consent.

Initially, the parties proceeded as they had before the assignment. Closing was scheduled for May 25, 2021. The title company re-issued its title-insurance commitment in Pack Properties' name and revised all closing documents to name Pack Properties as the purchaser, and Allen revised the warranty deed to show Pack Properties as the purchaser. Pack Properties executed all the closing documents and placed them in escrow with the title company and initiated a wire transfer for the purchase price of the Property.

The day before the closing date, Remington asked to postpone closing for one month, until June 25. Through Allen, Remington promised to execute the closing documents and to put them in escrow, so Pack Properties, through True, agreed to the postponement and pulled back its wire transfer.

–4–

Three days later, on May 27, Allen sent a letter to Lebowitz and True requesting for the first time "appropriate written evidence" that the assignment had been made according to the Contract, i.e., to an affiliate of T&T or an entity otherwise under the common control of T&T. The letter also referred to a second agreement Remington had with another entity to purchase land adjacent to the Property and said that:

> Under that [second] agreement the purchaser named therein has certain rights to acquire the Property if the Purchaser fails to close the purchase of the Property as required pursuant to the Contract. The Seller believes that it may have some liability to the purchaser in that agreement if it were to sell the Property to Pack in violation of the terms of the Contract.

Lebowitz had learned of the existence of this second contract between Remington and Shottenkirk Highway 380 Properties, LLC (Shottenkirk) during negotiations for the Contract. He testified in his summary judgment affidavit that Allen told him that Shottenkirk had a right to purchase the Property if the Contract did not close or was terminated, but appellants learned only later that the Shottenkirk right to purchase the Property could be triggered by delay in closing appellants' Contract.

In response to Allen's request for evidence of affiliation, True drew up and sent Allen a draft of the organizational chart for the Pack-Lebowitz Enterprise. True testified that Allen then called him and relayed Graff's "reluctance to close" the sale, expressing Graff's "primary concern" that he would be sued by Shottenkirk if he closed. True stated that, according to Allen, "Graff would have Remington close [the] Contract, if [appellants] would indemnify Remington and Graff should

–5–

Shottenkirk file a lawsuit." After reporting the phone call to his client, True offered instead to have Pack Properties rescind the assignment and to have T&T close as the Purchaser under the Contract. Remington did not respond to this offer.

When the extended closing date arrived, Pack Properties had executed the closing documents and funded the purchase by a new wire transfer, but Remington refused to close the sale.

*The Lawsuit Below*

Pack Properties filed suit for breach of the Contract, alleging that Remington breached by failing to comply with its contractual closing obligations; it sought specific performance of the Contract or substantial damages. It also made a claim for declaratory judgment, seeking declarations: that T&T and Pack Properties are affiliates of each other; that Remington and its attorney, Allen, consented to the assignment; and that Remington is estopped to assert the assignment was in breach of the Contract. It also pleaded that waiver and estoppel operate to prevent Remington's objecting to the assignment. And—in a separate estoppel pleading—it contended that Remington cannot object to the assignment because Pack Properties and T&T offered to cure any assignment-provision breach.

Remington answered and pleaded counterclaims for breach of contract and declaratory relief against Pack Properties as well as a third party claim for the same

declaratory relief against T&T.[2] T&T answered and pleaded counterclaims against Remington for breach of contract and declaratory relief.

*The Summary Judgment Motions*

Pack Properties and T&T filed their Partial Motion for Summary Judgment Against Remington, urging that "the single issue for this Court to decide in connection with this Motion for Summary Judgment is whether T &T and Pack XIV are 'affiliates' of each other in the context of their activities on behalf of the Lou/Sam Enterprise." Factually, the motion relied on affidavits from Lebowitz, Pack, and True, on excerpts from Graff's deposition, and on the Enterprise's organizational chart.

Legally, the motion cited and addressed nine cases that discussed the meaning of "affiliate," beginning with *Eckland Consultants, Inc. v. Ryder Stillwell, Inc.,* 176 S.W.3d 80 (Tex. App.—Houston [1st] 2004, no pet.), which appellants acknowledged to be the "most cited case" on the issue. After reporting that the contract at issue did not define affiliate, the *Eckland Consultants* court stated that the word:

> is generally defined as a "corporation that is related to another corporation by shareholdings or other means of control," BLACK'S LAW DICTIONARY 59 (7th ed.1999), and as a "company effectively controlled by another or associated with others under common ownership or control." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (1971).

---

[2] Remington also made third party claims against Shottenkirk; those claims were later dismissed and play no part in this appeal. T&T also pleaded its own third party claim against Shottenkirk.

*Id.* at 88. Appellants argued that the organizational chart showed that they met this definition because T&T and Pack Properties were "related to" one another. Appellants argued further that Lebowitz and Pack "controlled" one another in furtherance of the Enterprise because: (a) T&T was related to the other Lebowitz entities, and Pack Properties was related to the other Pack entities; (b) pursuant to the MADA, Lebowitz and Pack had shared control of the Enterprise; and (c) the Lebowitz and Pack affidavits stated that the two men "would each have shared control in the decision-making and [they] would each have veto power to stop any of the enterprise's potential decisions that either of [them] opposed."[3]

Remington filed two summary judgment motions against T&T and Pack Properties. It filed a no-evidence motion that essentially identified every element in appellants' breach of contract claims, their request for specific performance, and their declaratory judgment claims, as well as their affirmative defense. It also filed a joint traditional partial summary judgment motion against appellants. The traditional motion agreed that the "pivotal issue in this litigation" was whether Pack Properties was an affiliate or entity controlled by T&T. Remington's summary judgment evidence was drawn from the depositions of Pack, Lebowitz, and Graff, and the Declaration of Robert Allen.

---

[3] Appellants went on to cite and address cases with a number of different understandings of the word affiliate; given our threshold resolution below of the meaning of the term, we need not discuss those cases further.

Legally, Remington focused on this Court's opinion in *Vision Capital Real Estate, LLC v. Wurzak Hotel Group*, No. 05-15-00917-CV, 2016 WL 6093977 (Tex. App.—Dallas Oct. 19, 2016, no pet.) (mem. op.), in which we essentially adopted the *Eckland Consultants* definition of affiliate quoted above. Remington contended that at all times relevant to this litigation, Lebowitz had the sole right to control T&T and Pack had the sole right to control Pack Properties. Remington also contended that the organizational chart provided by appellants showed no affiliation between the two entities. The summary judgment evidence established that T&T did not seek or obtain Remington's written consent before assigning its Contract rights to Pack Properties. Therefore, Remington argued, it was entitled to judgment as a matter of law that T&T failed to comply with the Contract by assigning the agreement to Pack Properties (a) which was not an affiliate of T&T, (b) without obtaining Remington's prior written consent. Remington asserted that this failure to comply with the assignment provision of the Contract "constituted a prior material breach excusing Remington's future performance under the [Contract], including but not limited to, its obligations regarding closing of the [Contract]." As a result, it argued that it was entitled to Contractual remedies, including termination and liquidated damages.

The trial court denied appellants' motion; it granted both of appellee's motions. The court's Final Judgment concluded that appellants should take nothing on their claims against Remington and that Remington should recover the $200,000

deposit held in escrow, its costs, and attorney's fees for trial and, conditionally, appellate attorney services.

This appeal followed.

**Discussion**

Appellants contend that the trial court erred in granting Remington's motions and in denying appellants' motion. We apply well-known standards in our review of traditional and no-evidence summary judgment motions. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i). In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless

reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we render the judgment that the trial court should have rendered. *Id.*

Together, these motions present intertwined issues that could allow either—or neither—side to prevail on summary judgment. Appellants' motion attempted to prove: appellants' own compliance with the Contract, specifically with the assignment clause; Remington's breach by its failure to close the sale; and appellants' resulting entitlement to specific performance.[4] Remington's traditional motion attempted to prove: appellants' breach of the assignment provision; Remington's excuse for failing to close based on that prior material breach by appellants; and its entitlement to attorney's fees. In its no-evidence motion, Remington essentially challenged the existence of evidence on each element of appellants' claims for breach of contract as well as their entitlement to specific performance.[5]

---

[4] Appellants' motion was only partial because it did not address their claim for attorney's fees.

[5] The no-evidence motion could not urge Remington's defense of prior material breach because it was Remington's burden to prove the elements of that defense. *See Pollard v. Hanschen*, 315 S.W.3d 636, 639 (Tex. App.—Dallas 2010, no pet.) ("A party may not file a no-evidence summary judgment motion on an affirmative defense he has the burden to prove at trial.")

Remington's motions also addressed appellants' declaratory judgment claims and their affirmative defenses of waiver and estoppel. Given our resolution of appellants' first two subsidiary issues, we conclude that any rulings concerning these additional issues would be inappropriate dicta.

*Affiliate Status*

In appellants' first subsidiary issue on appeal, they contend that, as a matter of law, they are affiliates of each other so that they did not need Remington's consent for T&T to assign the Contract to Pack Properties. Alternatively, they contend that there is a fact issue as to appellants' affiliate status. The parties and their motions agree that the threshold issue for summary judgment is whether Pack Properties is an affiliate of T&T. If Pack Properties *is* an affiliate of T&T, then appellants complied with the assignment clause of the Contract; if not, then T&T's assignment to Pack Properties without Remington's consent was a breach of the Contract.

We repeat the critical assignment provision, section 14.11 of the Contract:

Purchaser may assign this Contract to an affiliate or entity under common control with Purchaser with notice to, but without the consent of Seller. Any other assignment shall require Seller's prior written consent.

The Contract defines the "Purchaser" as T&T, but it does not define "affiliate." The parties disagree about the definition or legal standard one entity must meet to qualify as an affiliate of another.

In this Court, appellants urge us to apply the word's "broad, ordinary meaning" in this case, and they offer numerous dictionary definitions and quotes from case law, which lead them to contend that our affiliate inquiry should be whether the entities (or individuals) are "associated with" each other and "connected with" each other. Appellants argue that T&T and Pack Properties are indeed associated with and connected with each other by virtue of the Enterprise that was

(a) created by Pack and Lebowitz and (b) illustrated by the organizational chart submitted as evidence in the summary judgment proceeding.

Remington argues that this Court has already determined the meaning of affiliate in a contract that does not define the word, citing *Vision Capital*, in which we stated:

> The contract does not define "affiliate," so we apply its plain, ordinary, and generally accepted meaning. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "Affiliate" is generally defined as a "corporation that is related to another corporation by shareholdings or other means of control" and as a "company effectively controlled by another or associated with others under common ownership or control." *Eckland Consultants, Inc. v. Ryder, Stillwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (internal citations omitted).

2016 WL 6093977 at *4.

Appellants posit that *Vision Capital* is "noncontrolling and distinguishable" for several reasons. First they assert that the *Vision Capital* court was proffered only one dictionary definition in that case, and they contend that the court might have reached a different conclusion "had it been confronted with a full-throated argument" about the term's broad meaning. But *Vision Capital*, as we have quoted it above, did not rely on just a single dictionary definition. Instead it cited to *Eckland Consultants*, which in turn cites specifically to two significant dictionaries.[6] Moreover, while the issues on appeal are determined by the appellant, we note that

---

[6] The *Eckland Consultants* definition, quoted earlier herein, includes citations to Black's Law Dictionary and Webster's Third New International Dictionary. 176 S.W.3d at 88.

–13–

appellate courts routinely undertake the legal research necessary to determine how those issues should be resolved. A reviewing court is not limited to the legal authority cited by either party.

Remington's remaining points here—that the *Vision Capital* appellant offered no evidence of control to meet the *Eckland Consultants* standard, and that *Vision Control*'s disposition turned on a different issue and dispositive fact—do not speak to that opinion's determination of the "plain, ordinary, and generally accepted" meaning of affiliate when it is not defined in the parties' contract.

We agree with Remington on this threshold point. "[W]e follow our own precedent and may not overrule a prior panel decision of this Court, absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc. *Interest of P.M.B.*, No. 05-20-00559-CV, 2022 WL 16569600, at *4 (Tex. App.—Dallas Nov. 1, 2022, no pet.) (mem. op.) (citing *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 n.8 (Tex. 2022)). None of those conditions exists here; we are bound by *Vision Capital*. *Id.*

Remington's Contract was with T&T. Appellants' organizational chart indicates that T&T is an entity owned 100% by Lebowitz. The affiliate question, thus, becomes whether T&T—or Lebowitz, its owner—exercises sufficient control over Pack Properties to bring it within *Vision Capital*'s definition of affiliate.[7]

---

[7] Appellants contend that the Contract permitted three categories of assignees:  (1) affiliates, (2) entities under common control with Purchaser, and (3) other assignees with Remington's consent. They argue that

Remington points to appellants' organizational chart and finds no indicia of the control that *Vision Capital* clearly requires for an affiliate relationship. It argues that the chart fails to demonstrate that Pack Properties is owned or controlled by Lebowitz or T&T. Indeed, it argues that the organizational structure shows no direct relationship or affiliation between T&T/Lebowitz and Pack Properties.

Appellants argue that the organizational chart illustrates the network of entities created by Lebowitz and Pack to conduct their Enterprise. The two men jointly own the entity that will directly own the Subaru dealership (Lebowitz at 51% and Pack at 49%), pursuant to their MADA. And pursuant to their affidavits, the two men agreed in 2021,

> that in order to consummate the formation of our partnership and/or joint enterprise for the Dealership, we needed to have certain entities owned and/or controlled by each of us enter into written agreements, whereby [they] and our respective entities agreed to join together into a single enterprise that would purchase the Property, and then build and operate the prospective Dealership in Prosper, Texas, ("'the Lou/Sam Enterprise"). [We] would each have shared control in the decision-making and we would each have veto power to stop any of the enterprise's potential decisions that either of us opposed.

---

"[t]here would be no need for section 14.11 to separate the concepts of 'affiliates' and an 'entity under common control with Purchaser' if the word 'affiliate' required control." But the Texas Supreme Court has "repeatedly recognized, when faced with legal language that appears repetitive or otherwise unnecessary, that drafters often include redundant language to illustrate or emphasize their intent." *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 582 (Tex. 2022). Although *Jackson* involved statutory interpretation, it relied on that court's precedent involving contract interpretation. *See id.* (citing *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 477 (Tex. 2016) (interpreting damage-to-premises language of lease) and *Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 873 (Tex. 2016) (interpreting royalty provision of gas-lease)).

We conclude that a fact issue exists concerning whether T&T or Lebowitz exercises sufficient control over Pack Properties to conclude that Pack Properties is an affiliate of T&T. Therefore, neither party established its position concerning the validity of the assignment of the Contract as a matter of law. We sustain appellants' first issue to the extent it urged alternatively that a fact issue exists on affiliate status.

This conclusion, while necessary, is not conclusive of this appeal. It leads to different results for appellants and Remington:

(1) Remington's Motions must be denied. Appellants defeated the no-evidence motion as to their purported breach by producing sufficient evidence of control to raise a fact issue on their compliance with the assignment provision. Because Remington failed to prove the prior breach by appellants as a matter of law, it has not established an excuse for its failure to close, and the traditional motion fails as well.

(2) Appellants failed to prove conclusively that they did *not* breach the assignment provision of the Contract. However, appellants could still prevail on their summary judgment claim based on Remington's failure to close if they established as a matter of law that any breach of the assignment provision was immaterial and, therefore, could not excuse Remington's failure to close.

Given the latter result, we proceed to consider the issue of the materiality of a breach of the Contract's assignment clause within the context of the parties' motions for summary judgment.

*Materiality*

Appellants' second subissue contends that if their failure to obtain Remington's consent to the assignment was a breach of the Contract, then as a matter of law it was an immaterial breach so that Remington was still required to close the sale. Alternatively, they contend there is a fact issue on the materiality of such a breach.

Remington's defense below and its traditional summary judgment motion were rooted in its affirmative defense of a prior material breach by appellants. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). If Pack Properties is not an affiliate of T&T, then Remington's consent was necessary for the assignment to be valid. If appellants' failure to obtain that consent was a material breach of the Contract, then Remington was excused from its obligation to close the sale of the property. *See id.*

At the outset, we note that the parties make conflicting assertions concerning the nature of the materiality question. Remington asserts that what constitutes a material term is a question of law; appellants argue that materiality is ordinarily a fact question. Both cite Texas opinions for their position. The confusion appears to stem from two different contexts in which an inquiry may arise concerning the materiality of a contract term.

One such context occurs when a court must determine if the parties' agreement is sufficiently certain to be an enforceable contract. The question generally arises when the agreement lacks a particular term or contains a term that is unclear. The ultimate issue in this kind of case is the existence of a valid contract, which is a legal question. *See, e.g., Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 481 (Tex. 2019); *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Accordingly, we evaluate de novo whether the missing or unclear term is material, i.e., whether it is necessary to understanding the parties' obligations in performing the contract.

The second group of cases that analyze materiality are those like our own, where the question is whether a breach by one party was sufficiently important to excuse the other party's continuing performance, i.e., the affirmative defense of prior material breach. These cases do not address a missing term and its effect on the validity of a contract; instead, these cases look to the significance of a particular term within the total agreement. Courts performing this analysis address the materiality issue as a fact question. *See, e.g., Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam) ("Generally, materiality is an issue 'to be determined by the trier of facts.'" (quoting *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983))). When evaluating the materiality of a prior breach, we may decide the issue as a matter of law only if reasonable jurors could reach only one verdict. *Id.; see City of Keller v. Wilson*, 168 S.W.3d 802, 822

(Tex. 2005) ("If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so.").

The Texas Supreme Court has identified five factors that can be significant in determining whether a failure to perform is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). As to the first factor, some courts have concluded in essence that the less the non-breaching party is deprived of its expected benefit, the less material the breach is. *See, e.g., Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 n.2 (Tex. 1994); *Sky Cap. Grp., Ltd. v. Bombardier, Inc.*, No. 05-13-00133-CV, 2014 WL 6807710, at *4 (Tex. App.—Dallas Dec. 3, 2014, no pet.). Indeed, we have stated when discussing the defense of prior material breach that "[a] material breach is conduct that deprives the injured party of the benefit that it reasonably could have anticipated from the breaching party's full performance." *Hollingsworth v. Parklane Corp.*, No. 05-19-

01576-CV, 2021 WL 1290735, at *2 (Tex. App.—Dallas Apr. 7, 2021, no pet.) (citing *Hernandez*, 875 S.W.2d at 693).

Remington bore the burden to prove its affirmative defense of a prior material breach. *See Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851–52 (Tex. App.—Dallas 2005, pet. denied). However, neither party offered summary judgment evidence speaking specifically to the materiality of the purported breach by appellants. On appeal, therefore, both sides essentially argue the issue as a matter of law. Remington argues that the identity of the parties is a "first order term" of any contract, and complains that if the assignment were enforced, it would be "contractually bound to sell its real property to a stranger." It does not explain what benefit it would lose in that case. Appellants opine—in reliance on the first *Mustang Pipeline* factor—that Remington lost no expected Contract benefit as a result of the assignment to Pack Properties. They contend that "Remington would have timely received the full sales price from a ready, willing, and able substitute buyer that Remington has never objected to." They add that even if there were some prejudice to Remington, the offer to rescind the assignment would have cured it by restoring T&T as the purchaser of the Property. But neither party speaks to any of the remaining *Mustang Pipeline* factors.

We conclude that neither Remington nor appellants have established their position on the materiality of a breach of the assignment provision as a matter of law. Reasonable jurors could reach different conclusions on materiality, and so fact

–20–

issues remain on the issue. *See Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436. Neither party is entitled to summary judgment on the issue.

We sustain appellants' second subissue to the extent that it argued alternatively that a fact issue exists on the issue of the materiality of any breach of the assignment provision of the Contract.

## Conclusion

We conclude that a fact issue exists concerning whether appellant Pack Properties is sufficiently within the control of appellant T&T to be T&T's affiliate. We conclude further that a fact issue exists concerning whether a breach of that provision by appellants, if it occurred, would have been material. Accordingly:

- Remington's traditional motion for summary judgment did not establish as a matter of law that it was entitled to summary judgment on its defense of a prior material breach of the Contract;

- Appellants came forward with sufficient evidence on the issue of a breach of the assignment provision to raise a fact issue and to defeat Remington's no-evidence motion; and

- Appellants' traditional motion did not establish as a matter of law that they did *not* materially breach the Contract by assigning it to Pack Properties; therefore, the motion failed to establish that appellants were entitled to specific performance of the Contract based on an unexcused breach by Remington.

In sum, the trial court erred by granting summary judgment in favor of Remington, but appellants have not proved that they were entitled to judgment as a matter of law. For these reasons, we reverse the trial court's Final Judgment and remand this case for further proceedings.

/Bill Pedersen, III/
BILL PEDERSEN, III
221211F.P05                        JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PACK PROPERTIES XIV, LLC
AND T&T REALTY CORP.,
Appellants

No. 05-22-01211-CV      V.

REMINGTON PROSPER, LLC,
Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-04301-
2021.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants Pack Properties XIV, LLC and T&T Realty Corp. recover their costs of this appeal from appellee Remington Prosper, LLC.

Judgment entered May 29, 2024